Continental-United Industries Co. Inc. *v.* Dir. Div. Employment Security.

his family." This provision does not in our opinion author-ize us to excuse compliance with statutory requirements that are clear and mandatory. *New England Trust Co.* v. *Assessors of Boston*, 308 Mass. 543, and cases cited. Nor do we find anything in G. L. (Ter. Ed.) c. 223, § 84, cited by the petitioner, which would affect the result here reached. That statute cannot be invoked to revive a proceeding already dead. See *Rosenblatt* v. *Foley*, 252 Mass. 188, 190.

*Decision of District Court affirmed.*

CONTINENTAL-UNITED INDUSTRIES Co., INC. *vs.* DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & others (and two companion cases[1]).

Hampden. September 21, 1950. — November 7, 1950.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Employment Security*, Overpayment of contributions, Merit rating, Em-ploying enterprise.

A successor employing unit acquiring the assets, business and employees and continuing the operation of an employing enterprise after the effective date of St. 1945, c. 516, revising subsection (c) of § 14 of the employment security law, G. L. (Ter. Ed.) c. 151A, was not entitled to apply against its own contributions "credit memoranda" issued by the director of the division of employment security to its predecessor employing units under § 14 (c), as so revised, to cover certain over-payments of contributions made by the predecessors before the effective date of the 1945 act.

Two corporations, which as successor employing units successively ac-quired the assets, business and employees of and continued without interruption or change the operation of an employing enterprise pre-viously operated by a third corporation and at all times really owned and controlled by a fourth corporation through stock ownership, were entitled, apart from G. L. (Ter. Ed.) c. 151A, § 14 (c), as appearing in St. 1945, c. 516, to enjoy a favorable employment security contri-bution rate previously enjoyed by their predecessor, the third corpo-ration, and to recover in actions of contract under § 18, as appearing

---

[1] The two companion cases are Walsh Holyoke Boiler Works, Inc. *vs.* Director of the Division of Employment Security, and Franklin Machine & Foundry Company *vs.* Same.

in St. 1941, c. 685, § 1, overpayments arising from their payment of contributions at a higher rate before St. 1945, c. 516, took effect: such overpayments were "erroneously collected" within § 18 at the times they were made.

BILL IN EQUITY, filed in the Superior Court on September 11, 1947, against the director of the division of employment security, Franklin Machine & Foundry Company, and Walsh Holyoke Boiler Works, Inc.; also

TWO ACTIONS OF CONTRACT by Franklin Machine & Foundry Company and Walsh Holyoke Boiler Works, Inc., respectively, against the director. Writs in the Municipal Court of the City of Boston dated September 5, 1947.

Upon removal of the actions to the Superior Court, they were consolidated with the suit in equity, and the cases were heard by *Forte*, J.

In this court the cases were submitted on briefs and supplementary briefs.

*E. P. Brooks, A. B. Green,* & *D. E. Burbank, Jr.,* for the plaintiffs.

*F. E. Kelly,* Attorney General, & *A. M. Cicchetti,* Assistant Attorney General, for the director of the division of employment security.

QUA, C.J. These three cases come here upon a single statement of agreed facts in the form of a case stated and were reported without decision by a judge of the Superior Court. All three cases raise the question whether the employing enterprise with which the cases are concerned, operated by successive employing units, was entitled to a more favorable contribution rate than that with which it had been charged and at which it had paid for parts of the years 1944 and 1945, and the questions now before us are whether, in what manner, and to what extent the successive employing units or any of them can realize the benefit of the "overpayments." The first case is a bill in equity by the fourth and latest employing unit praying for a declaratory judgment that it is entitled to the benefit of all the "overpayments" by way of having them applied against contributions payable by it under the act. The second and

third cases are actions of contract brought under § 18 of the act as appearing in St. 1941, c. 685, § 1, by the second and third employing units to recover the "overpayments" made by each respectively.

From the facts agreed it appears that prior to May 9, 1944, Walsh Holyoke Steam Boiler Works, Inc., hereinafter called Walsh Holyoke Steam, the first employing unit, operated the enterprise and because of its previous record enjoyed a contribution rate of one half of one per cent. On that day Franklin Machine & Foundry Company, the second employing unit, hereinafter called Franklin, by acquisition of the capital stock and all the assets and employees of Walsh Holyoke Steam, succeeded to the enterprise; but the director denied to Franklin the benefit of the wage experience of Walsh Holyoke Steam and assessed Franklin as a new employing unit at the rate of two and seven tenths per cent, at which rate Franklin paid until March 31, 1945. On April 1, 1945, Franklin transferred to Walsh Holyoke Boiler Works, Inc., hereinafter called Walsh Holyoke, a new corporation, being the third employing unit, the assets, employees, and business of the employing enterprise in exchange for all the stock of the new corporation, and Walsh Holyoke became a succeeding employing unit. The director assessed it as a new employing unit at the rate of two and seven tenths per cent. Finally, in May, 1946, Continental-United Industries Co., Inc., hereinafter called Continental, which then owned all the stock of Walsh Holyoke, exchanged its stock ownership for the assets of the latter corporation and continued the business and so became the fourth employing unit operating the enterprise. In each instance the successor employing unit took over the entire business of its predecessor, continued it without interruption, and assumed all its liabilities. In each instance the predecessor unit wholly ceased to do business in this Commonwealth, and the successor unit had no business in this Commonwealth other than that to which it succeeded. Moreover, at all times Continental owned all the stock of Franklin and through stock ownership was at

all material times the sole real owner and in control of the entire enterprise through all the changes hereinbefore narrated. We read the brief of the Attorney General in behalf of the director as conceding that the second, third and fourth of these employing units was each in turn a successor employing unit within the meaning of the act.

It now becomes necessary to turn to the pertinent statutes. By St. 1945, c. 516, certain changes were made in subsection (c) of § 14 of the act. As so modified the subsection, so far as here material, read, "(c) For the purposes of this section, when the employing enterprises of an employer or employers are continued solely and without interruption by an employing unit not previously subject to this chapter, the contribution record of the predecessors and the record of workers' benefit wages which were charged or would have been charged to the predecessor employer or employers, if no change in legal identity or form had occurred, shall cease to be the records of the predecessor employer and shall become part of the records of the successor employing unit in determining his benefit wage ratio in the following cases: — . . . 7. Where a corporation so succeeds to the employing enterprises of an individual, partnership or other corporation, without substantial change in the nature of the business." [1] After providing that the subsection should apply retrospectively for (as relates to this case) the years 1944 and 1945, the subsection contained a proviso "that the provisions of this subsection shall not authorize the refund of any moneys except in accordance with section eighteen. The director may, however, issue credit memoranda as against future contributions to any employer entitled thereto under this chapter. Said credit memoranda shall be personal to the employer to whom issued and shall not be assigned or encumbered, or be subject to trustee or mesne process." This act became effective September 26,

---

[1] This subparagraph numbered 7 was the first express statutory recognition of the right of a single corporate employer succeeding another single corporate employer to the benefit of the predecessor's merit rating in calculating the successor's contributions. But see *Packard Clothes Inc.* v. *Director of the Division of Employment Security*, 318 Mass. 329, 335–336.

1945.[1]  The reference to "credit memoranda" was new in the act of 1945.  The § 18 to which reference is made appears in St. 1941, c. 685, § 1.  It provides that if, upon application within three years of a person who has paid a contribution, the director shall determine that the contribution "was erroneously collected," he "shall allow such person to make an adjustment thereof in connection with a subsequent payment, or shall authorize the refund of said amount . . .."  It further provides that where the director denies an application for a readjustment or a refund, "which application has been filed by an applicant who has paid a contribution under this chapter, such applicant, in addition to any other remedy which he may have, may bring an action of contract against the director to recover the whole or any part of such contribution."  Further details of this section are not here material.

After the act of 1945 became effective on September 26, 1945, the director issued to Franklin "a credit memorandum" in the amount of $10,991.06 to cover so much of its previous contributions as would be an "overpayment" when according to the retrospective feature of the 1945 act Franklin became entitled to the benefit of the record of its predecessor with respect to the years 1944 and 1945; but Franklin had no opportunity to use this "credit memorandum" against any contributions due from it because its successor, Walsh Holyoke, had taken over the enterprise before the 1945 act took effect and before this credit memorandum was issued.  Similarly the director issued a "credit memorandum" to Walsh Holyoke;[2] but that employer was able to use only a small part of its "credit memorandum" against contributions due from it before its successor, Continental, took over the enterprise.  The unused portion of this "credit memorandum" is $4,645.63.  From the time when the 1945 act took effect the director has given Walsh

---

[1] For subsequent changes in § 14, subsection (c), see St. 1946, c. 360; St. 1947, c. 440, § 1; St. 1949, c. 740, § 2.

[2] The director also allowed to Walsh Holyoke a cash refund in a further sum with which we are not concerned in these proceedings.

Holyoke and Continental the benefit of their predecessors' wage experience in calculating their contributions as they have fallen due; but he has refused to allow Continental to apply against its own contributions the "credit memoranda" issued to its predecessors because of the provision of § 14 (c) that "Said credit memoranda shall be personal to the employer to whom issued and shall not be assigned or encumbered, or be subject to trustee or mesne process," and he has denied refunds under § 18 to Franklin and Walsh Holyoke because when the "overpayments" were made the 1945 act had not yet taken effect and therefore, as he contends, the payments were not "erroneously collected" within the meaning of those words in § 18. Franklin and Walsh Holyoke have acted in all respects in compliance with the provisions and within the limitations of § 18. Thus it appears that because of the rapid succession of employing units in this business enterprise and the positions taken by the director the enterprise has been unable as yet to realize through any of its successive employing units the benefit of contributions aggregating $15,636.69 which according to the retrospective feature of the 1945 act were "overpayments."

In our opinion the director rightly refused to allow Continental to apply against its own contributions the "credit memoranda" issued to its predecessors. Its only possible claim to such right of application is as assignee of these "credit memoranda" by virtue of its acquisition in general of the assets of its predecessors. But the Legislature made doubly sure in the next to the last paragraph of G. L. (Ter. Ed.) c. 151A, § 14, subsection (c), as appearing in St. 1945, c. 516, that "credit memoranda," for which provision was first made in that act, should not become assignable assets. Not only were they to be "personal to the employer to whom issued" but they were not to "be assigned or encumbered, or be subject to trustee or mesne process." The purpose seems to have been to set up merely bookkeeping credits to be availed of only as offsets against subsequent charges in the same accounts. The director in keeping the

accounts was to be relieved of all questions relating to assignments in whole or in part or to attachments or other liens. He need not look beyond his credits and charges. The statute admits of no exceptions. Justice does not require any exception in the case of a succeeding employer. Ordinarily there is no inherent reason why a successor should acquire the right to credit past overpayments of his predecessor against his own future obligations. The relation of predecessor and successor employer may arise in many ways. Sometimes all the assets may be transferred and sometimes they may not be. Not infrequently the predecessor may retain all receivables or some of them. Conveyances and contracts between predecessor and successor may contain complicated provisions. In instances of successive employers, as in other instances, questions could be involved with which it was intended that the director should not concern himself in any degree.

Continental relies upon the cases of *Packard Clothes Inc.* v. *Director of the Division of Employment Security*, 318 Mass. 329, and *Bartels* v. *Director of the Division of Employment Security*, *ante*, 1, but in those cases the plaintiffs were the same employers that had made the payments, and no question of assignment was involved in either case.

It must be remembered, however, that an employer's right to avail himself of a "credit memorandum" is distinct from his right to a refund. The right to a refund may still exist, even where a "credit memorandum" has been issued. That right is recognized in § 14, subsection (c), as appearing in St. 1945, c. 516, by the reference therein to § 18, which governs the exercise of the right. The right is to be availed of by application by "a person who has paid such contribution" and, if the director denies the application, by action of contract against the director (§ 18).[1] The plaintiffs Franklin and Walsh Holyoke are such persons. They have brought such actions and have qualified within the provisions of § 18. They are entitled to refunds. Continental

[1] See also § 15 (c) (d), as appearing respectively in St. 1943, c. 373, and St. 1941, c. 685, § 1, affording an alternative remedy in certain circumstances.

does not claim any right to refunds.  And it is agreed by all parties in the case stated that Continental does not seek even the benefit of the "credit memoranda," if both Franklin and Walsh Holyoke are entitled to refunds.  By means of refunds to Franklin and Walsh Holyoke the "overpayments" will be set right, and will be returned to the employers which paid them.  If because of arrangements between these plaintiffs and Continental the money should ultimately go to Continental, that is a matter not here involved and of no concern to the director.  There will have been compliance with the statutory provisions.

We cannot agree with the position taken by the director that Franklin and Walsh Holyoke are not entitled to refunds because the "overpayments" were not "*erroneously* collected" (emphasis supplied) from those employers before September 26, 1945, when St. 1945, c. 516, took effect, whereby those employers acquired express statutory rights to avail themselves of the contribution records of their predecessors in the determination of their own benefit wage ratios.  We think that under our previous decisions, and in the circumstances of these cases, Franklin and Walsh Holyoke had similar rights before St. 1945, c. 516, took effect, and independently of that statute.  In the case of *Packard Clothes Inc.* v. *Director of the Division of Employment Security*, 318 Mass. 329, at page 335, speaking of § 14 as it appeared in St. 1941, c. 685, § 1, before the insertion of any subsection (c) whereby express provision was made giving a successor employing unit the benefit of the record of its predecessor, and speaking also of subsection (c) as inserted by St. 1943, c. 534, § 1A, which was the immediate precursor of subsection (c) as appearing in St. 1945, c. 516, we said, "We are of opinion that the absence from § 14 as it appears in St. 1941, c. 685, § 1, of any provision for the transfer of merit ratings does not mean that a successor employing unit, such as the plaintiff, is not entitled to enjoy the merit ratings acquired and enjoyed by the predecessor employing unit at the time of the succession.  That the Legislature did not so intend is evidenced by the provisions

of St. 1943, c. 534, § 1A." And on page 336 we said, "We think that the amendment [expressly providing for the transfer of merit ratings] was intended to clarify the subject matter and to assure transfer of merit ratings in the particular cases specified, leaving the subject as to cases such as the present one to be governed by those provisions of § 14 that were unaffected by the amendment." That case was followed in *Bartels* v. *Director of the Division of Employment Security*, *ante*, 1, 5–7. We do not repeat the reasoning fully set forth in those cases. We think it applies in the cases before us, where the enterprise was continuous, remained at all material times the same, and throughout all the changes in corporate form was wholly owned by Continental. It follows that the "overpayments" by Franklin and Walsh Holyoke *were* "erroneously collected" at the times when these payments were made.

In the suit in equity a decree is to be entered to the effect that Continental is not entitled to have the "credit memoranda" for the "overpayments" applied in payment of contributions due from it. In the actions of Franklin and Walsh Holyoke judgment is to be entered for the plaintiffs respectively in the sums of $10,991.06 and $4,645.63, to be paid out of the clearing account as provided in G. L. (Ter. Ed.) c. 151A, § 18, as appearing in St. 1941, c. 685, § 1.

*So ordered.*