L & CP CORPORATION *vs.* DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & others.[1] No. 89-P-382. March 26, 1990. *Employment Security*, Employing enterprise. *Corporation*, Corporate entity.

This case deals with a claim by L & CP Corporation (L & CP) of entitlement to successor status under the Massachusetts employment security law, G. L. c. 151A, for the purpose of determining its experience rating and required contributions to the unemployment compensation trust fund. It also involves L & CP's claim that both it and another corporation were required to contribute assessments to the fund based on wages paid to the same employees doing the same work over the same period of time. A Division of Employment Security (division) review examiner, the full board of review, and a District Court judge, each, in turn, denied L & CP's claim to successor status and offered no relief as to contributions paid by L & CP under protest. We find it necessary to order that a new judgment enter remanding the case to the division.

The undisputed facts are these. Champion International Corporation (Champion) is a large diversified business which at one time, among its other activities, conducted a laminated and coated products operation in Ohio, Illinois, and Massachusetts. Although that operation was separate and distinct from Champion's other business activities, it had no separate corporate existence. Champion had purchased the entire laminated and coated products operation from St. Regis Paper Co. in 1984, and, effective May 31, 1985, Champion sold it to L & CP. The sales agreement was comprehensive, calling for the transfer to L & CP of all assets and liabilities relating to the operation and providing for the transfer of all employ-

---

[1]Also named were members of the Board of Review of the Division of Employment Security. In 1988, the newly created Department of Employment and Training replaced the Division of Employment Security. St. 1988, c. 236, § 19. Notwithstanding its new name, throughout the opinion, we refer to the agency as the division.

ees, including management. The actual operation of the laminated and coated products business in the three States continued virtually without change. Champion continued to conduct other diversified activities in Massachusetts and elsewhere, but it no longer engaged in the laminated and coated products business.

It appears that Champion paid its contributions to the unemployment compensation fund for its Massachusetts employees for 1985. Contributions were also assessed against L & CP for the laminated and coated products employees for 1985, and they were paid under protest. L & CP then sought relief, claiming entitlement to successor status under G. L. c. 151A, § 14 (*n*)(1), as appearing in St. 1976, c. 473, § 6. Under that section, a transferee is deemed to be a successor for the purposes of determining the transferee's contribution rates, and it may take over and continue the employer's account, "[i]f the entire organization, trade or business of an employer, or substantially all the assets thereof, is transferred to [it]."

Believing, mistakenly, that the issue was governed by G. L. c. 151A § 8(*e*), the review examiner, after a hearing, denied L & CP relief. Section 8, however, only determined which employers were subject to the employment security law, and no one disputed that L & CP was subject to the law. The issue of entitlement to successor status under G. L. c. 151A, § 14(*n*)(1), was not addressed. The review examiner's faulty reasoning was accepted by the board of review and the District Court judge. On appeal, the parties do discuss the issue in terms of the appropriate section of the statute.

1. *Was L & CP entitled to successor status?* We reach the conclusion that, because Champion did not transfer its entire diversified business, but only one division, L & CP is not entitled to successor status for purposes of determining the required rates of contribution. The case appears to us to be governed by *Community Feed Stores, Inc.* v. *Director of the Div. of Employment Security*, 391 Mass. 488 (1984). That case involved the transfer of two separate retail stores, each with its own management, location, assets, and employees, to two separate corporations. Looking to the legislative history, the court stated, "It seems clear that now a sole proprietorship or a corporation may not maintain separate units whose prior experience may pass to successors upon their separate transfer." *Id.* at 492.

Notwithstanding the *Community Feed Stores, Inc.* decision, L & CP contends that the laminated and coated products operation must be viewed as an "entire . . . business," within the meaning of the statute. Otherwise, L & CP argues, the Legislature would not have used the words "organization" and "business" in the disjunctive. Although the argument points out a possible ambiguity in the language, the term "entire . . . business," as an alternative to "entire organization" may not be altogether superfluous. An organization, for example, might transfer an entire business and leave itself as an empty shell, see *Packard Clothes, Inc.* v. *Director of the Div. of*

*Employment Security*, 318 Mass. 329, 335 (1945), or an individual might transfer his entire business without transferring any "organization." More to the point, however, we think the legislative history, described in *Community Feed Stores, Inc.* v. *Director of the Div. of Employment Security*, 391 Mass. at 492, confirms the result we reach. Before its revision by St. 1976, c. 473, § 6, the relevant portion of § 14(*n*)(1) provided that "[i]f the business of any employer is transferred, in whole or *in part*, to another employing unit, the transferee shall be deemed a successor for the purpose of this section; *provided, that the portion of the business so transferred was operated by the transferring employer as a separate business enterprise . . .* [emphasis supplied]." Thus, until the 1976 amendment, a partial transfer of the "business" of an employing unit, to be recognized for purposes of successor status, had to involve the transfer at least of a "separate business enterprise." Having purchased from Champion a separate business enterprise, L & CP would have qualified for successor status. But the 1976 amendment, which eliminated the reference to partial transfers, must have been intended to change that result and to prevent a new employing unit which acquires only a portion of another's business from obtaining successor status, even if that portion was operated as a separate business enterprise.

2. *Should both employing entities have been required to contribute for the same employees for the same period?* Prior litigation and the discussions in the literature concerning successor status have focused on the right of one employing unit to the benefit of the experience rating of another employing unit for purposes of determining the new employing unit's contribution rate. See, in addition to the *Community Feed Stores, Inc.* case, *Bartels* v. *Director of the Div. of Employment Security*, 326 Mass. 1 (1950); *Continental-United Indus. Co.* v. *Director of the Div. of Employment Security*, 326 Mass. 423 (1950); *McNear* v. *Director of the Div. of Employment Security*, 327 Mass. 717 (1951); *Pinto Valley Copper Corp.* v. *Arizona Dept. of Economic Security*, 706 P.2d 1251 (Ariz. App. 1985); 76 Am. Jur. 2d, Unemployment Compensation § 19 (1975); Note, Transfer of Experience Rating for Unemployment-Compensation Contributions to Successor Employment Units, 60 Harv. L. Rev. 276 (1946). L & CP's claim in the present case, on the other hand, has to do with the extent of its obligation to contribute for 1985, Champion, allegedly, having paid its contributions for the same employees for the same period.[2]

We see no justification in the statutory scheme for duplicative payments. The legislative purpose was to design a system whereby employers in the Commonwealth would finance unemployment benefits in amounts that

---

[2]L & CP contends, for the first time on appeal, that the contributions are taxes, and that it may not be subject to double taxation. We do not decide whether the required contributions are taxes or whether there is any valid constitutional claim.

generally reflect their experience with regard to benefits paid to their employees. To permit the Commonwealth's unemployment compensation trust fund to retain double payments for the same employees for the same period, in the absence of some failure on the part of the employing unit or some other special circumstance, would be to provide an unintended windfall to the fund. To the extent that the unemployment compensation trust fund has actually received double payments, at least where the payments are made under protest, fairness would require that there be some refund or credit to the employing unit's account.

We are unable to determine on the present record whether there has been an actual double payment and a consequent windfall to the Commonwealth's unemployment compensation trust fund. The issue is a complicated one, both factually and legally. Apparently the parties did not anticipate that the issue would arise, and they have not dealt with it in their briefs. We do not know, for example, the extent to which L & CP's new contribution rate would have affected the total amount of contributions due for the employees engaged in the laminated and coated products operation for 1985. Nor do we know whether Champion received credit to its account for any overpayment and benefited accordingly with respect to contributions due to the fund for its other employees in Massachusetts. See G. L. c. 151A, § 18. To the extent that Champion received such benefit, there would have been no windfall to the unemployment compensation trust fund, and any adjustment for L & CP's overpayments for 1985 would be a matter possibly to be resolved between Champion and L & CP rather than between L & CP and the division. Compare *Continental-United Indus. Co.* v. *Director of the Div. of Employment Security*, 326 Mass. at 429-430. These and any other matters related to possible double payments will have to be sorted out by the division.

Accordingly, the judgment is reversed and a new judgment is to enter in the District Court remanding the case to the division to determine the extent, if any, to which L & CP is entitled to a refund or credit for its 1985 contributions.

*So ordered.*

*John A. Wortmann, Jr.*, for the plaintiff.

*William D. Luzier, Jr.*, Assistant Attorney General, for Director of the Division of Employment Security.