49 Mass. App. Ct. 445 (2000)                    445

National School Bus Service, Inc. *v.* Commissioner of the Department of Employment & Training.

NATIONAL SCHOOL BUS SERVICE, INC. *VS.* COMMISSIONER OF
THE DEPARTMENT OF EMPLOYMENT & TRAINING.

No. 98-P-1109.

Suffolk. March 13, 2000. - June 19, 2000.

Present: PORADA, DREBEN, & DUFFLY, JJ.

*School and School Committee,* Transportation of students. *Department of
Employment and Training. Administrative Law,* Substantial evidence,
Judicial review.

A decision of a board of review of the Department of Employment and Train-
ing, reversing a previous determination that a vendor that successfully bid
on a municipal management contract was a "successor" to the business of
the prior vendor within the meaning of G. L. c. 151A, § 14(*n*), was not
supported by substantial evidence, and the matter was remanded for
reinstatement of the vendor as a successor, with entitlement to a cor-
responding potentially lower contribution rate to the unemployment
compensation fund. [452-454]

CIVIL ACTION commenced in the Boston Municipal Court
Department on March 18, 1994.

The case was heard by *Charles R. Johnson,* J.

*Macon P. Magee* for the plaintiff.

*Rafael S. Garcia,* Assistant Attorney General, for the
defendant.

DUFFLY, J. This appeal from a judgment entered in the Boston
Municipal Court brings before us the correctness of a redetermi-
nation by the commissioner of the Department of Employment
and Training (DET) concluding that National School Bus
Service, Inc. (National), did not qualify as a "successor," within
the meaning of G. L. c. 151A, § 14(*n*), to the business of In
City Boston Management/Transcomm Joint Venture.[1] National's
mandated payments to the State's unemployment fund were

[1]General Laws c. 151A, § 14(*n*)(1), as amended through St. 1990, c. 154,
§ 9, provides in pertinent part: "If the entire organization, trade or business of
an employer, or substantially all the assets thereof, are transferred to another

446            49 Mass. App. Ct. 445 (2000)

National School Bus Service, Inc. *v.* Commissioner of the Department of Employment & Training.

thus greater, based on its status as a "new" employer.[2] After hearing, a DET review examiner affirmed the decision of the commissioner. Because the DET board of review (board) denied National's application for further review, the review examiner's decision was deemed to be that of the board. See G. L. c. 151A, § 41. This decision in turn was affirmed by an order of a judge of the Boston Municipal Court. National filed this appeal pursuant to G. L. c. 151A, § 42, arguing that the decision of the board was not supported by substantial evidence and based on error of law. We agree.

1. *Background facts and proceedings.* We summarize below those facts which are based on the board's undisputed findings. On either an annual or a biannual basis, the Boston public school system (school system) accepted bids for a contract to manage the transportation of the city's public school students. The contract provides for a management fee to be paid to the successful bidder (vendor) in exchange for the management and maintenance of the school system's vehicles. The vendor is not required to provide any of its own assets to perform the contract. The school system provides the transportation fleet and the facilities and equipment necessary to maintain the fleet and to support the operation of the administrative and management services. The school system holds title to the personal property and owns the leasehold interest in the facilities. The vendor hires the employees, and the school system reimburses the vendor for these services and for any unemployment compensation contributions the vendor is required to make to DET.

The joint venture of In City Boston Management and

---

employer or employing unit, the transferee shall be deemed a successor for the purpose of this section."

[2]Employers subject to the provisions of G. L. c. 151A make contributions to the unemployment compensation trust fund based on a percentage (as provided by statute) with respect to the first $10,800 of wages earned by an employee in each calendar year. G. L. c. 151A, § 14(*a*)(4). Adjustments are made to this contribution rate based on the employer's experience. Contributions are pooled and are available to pay unemployment benefits. G. L. c. 151A, § 14(*a*). Employer accounts are established and maintained which reflect both the contributions of each employer and the charges against the account as a result of the payment of benefits. G. L. c. 151A, § 14(*c*), (*d*). As the successor to the In City Boston Management/Transcomm Joint Venture (ICBM/TJV) account, National would be entitled to a potentially lower contribution rate because it would contribute to the unemployment compensation fund based on ICBM/TJV's experience rating, G. L. c. 151A, § 14(*n*)(4), and National would be credited for the sum in ICBM/TJV's account, G. L. c. 151A, § 14(*n*)(2).

49 Mass. App. Ct. 445 (2000)                447

National School Bus Service, Inc. *v.* Commissioner of the Department of Employment & Training.

Transcomm (ICBM/TJV) was formed in 1990 for the exclusive purpose of obtaining and performing a transportation contract, as described above, for the school system. ICBM/TJV won bids for one-year contracts in both 1990 and 1991, and provided the services called for in the contract from 1990 until June 30, 1992.

In late March and early April of 1992, the school system advertised a new two-year contract, which was to be in effect for the period from July 1, 1992, to June 30, 1994. Both National and ICBM/TJV submitted bids for the contract, with National being the successful low bidder. As a result of being awarded the contract, National provided management and maintenance of the school system's transportation fleet using the same personal property, the same facilities, and substantially the same employees that ICBM/TJV had previously utilized. The board found these employees to include union bus drivers as well as nonunion employees such as supervisors, dispatchers, and office personnel.[3]

On or about July 15, 1992, National submitted to DET a completed two-page form provided by DET, entitled "Employer Status Report" and identified as form 1110.[4] Form 1110 was signed by a representative of National and by Alan Aronson for ICBM/TJV.[5] National, which signed the form as "successor," and ICBM/TJV, which signed as "predecessor," certified that National had acquired "all" of ICBM/TJV's "business." On the basis of the information contained on this form, DET on July 21, 1992, issued to National its determination that National was a successor employer and deactivated ICBM/TJV's account.

Subsequently, in circumstances we discuss in more detail below, DET came to the decision that it had made an error, and by letter dated November 10, 1992, DET notified ICBM/TJV,

---

[3]In addition, according to undisputed hearing testimony, the former employees of ICBM/TJV hired by National included administrative staff, accounting staff, and management, including the branch managers and the assistant accounting manager. The board also found (and the parties do not dispute) that the "executive management of ICBM/TJV and National are different people," although no evidence on this point was presented at the hearing.

[4]Pursuant to G. L. c. 151A, § 14(*n*)(1), "[a]ll transferring employers and successors" are required to give to DET written notice of the transfer "immediately."

[5]On the form Aronson gives as his title "V. President — ICBM." That Aronson signed the form on behalf of ICBM/TJV is not disputed.

but not National, that ICBM/TJV's unemployment account would be revived and the account balance restored to ICBM/TJV retroactive to June 30, 1992. As a result of this redetermination, National was now treated as a new employer, was not granted ICBM/TJV's contribution rate, and was required to, and did, pay unemployment insurance contributions for the period of July 1, 1992, through December 31, 1992. National's payment was for substantially the same employees for whom ICBM/TJV had previously paid for the period January 1, 1992, through June 30, 1992.

Written notification of this redetermination was not provided to National until January, 1993. National filed a timely appeal, and a hearing was scheduled.[6] ICBM/TJV did not appear. National appeared and presented evidence through two witnesses. The school system also appeared in support of National's position and offered the testimony of one witness. Two witnesses gave testimony on behalf of DET.

2. *Reconsideration of National's successor employer status.* DET reconsidered and revoked National's successor status on November 10, 1992, approximately three and one-half months following its initial determination. This occurred after DET received a letter dated November 3, 1992, from Aronson who, we assume, wrote the letter on behalf of the joint venture although on the letterhead of In City Boston Management.

Although Aronson did not request a hearing regarding DET's initial decision to grant National successor status and deactivate ICBM/TJV's account,[7] DET was not precluded from reconsidering the matter. General Laws c. 151A, § 71, as amended through St. 1990, c. 177, § 326, provides that, within a year from the date of the original determination, "[t]he commissioner may

---

[6]The hearing was rescheduled when it was determined that ICBM/TJV had not received notice of the hearing date. References to the hearing are to the hearing which took place after notice to ICBM/TJV.

[7]Section 14(*n*) sets forth and governs proceedings for redetermination and review of employer succession decisions, and provides in relevant part:

> "If the commissioner allows the transferee [here, National] to take over the account of any transferring employer having a plus balance, the commissioner shall notify the transferring employer [ICBM/TJV] of such allowance. The transferring employer may, within ten days after the date of mailing of the notice, request a hearing for the purpose of reconsidering whether the transfer of the account balance should be allowed. Such hearing and any subsequent appeal shall be in accordance

49 Mass. App. Ct. 445 (2000)                    449

National School Bus Service, Inc. *v*. Commissioner of the Department of Employment & Training.

reconsider a determination whenever he finds that (1) an error has occurred in connection therewith."[8]

In his letter of November 3, 1992, to DET, Aronson referred to a handwritten notation that he had made on form 1110[9] and stated that he did not intend, by signing the form, "to infer [*sic*] that [ICBM/TJV] ceased to exist as a legal entity [or] as an operational corporation" following its loss of the transportation contract to National. Aronson also asserted that he never intended that ICBM/TJV would lose its DET contribution rating and account to National "since the [joint venture] still had employees and needed to pay the appropriate taxes to the Commonwealth." DET treated the information contained in this letter as indicative of error and restored ICBM/TJV's experience rating and account to it as requested.

After hearing, the board concluded that ICBM/TJV had not "ceased doing all business in Massachusetts." This conclusion was not based on substantial evidence and, under applicable legal principles, National's successor status was improperly revoked.

3. *The evidence.* A reviewing board's decision will be upheld if it is supported by substantial evidence. G. L. c. 30A, §§ 1(6), 14(7). "In reviewing the decision of the board, we must determine whether the decision 'contains sufficient findings to demonstrate that the correct legal principles were applied, and must review the record to determine whether those findings are supported by substantial evidence.' *Guarino* v. *Director of the Div. of Employment Security*, 393 Mass. 89, 92 (1984). A deci-

---

with the procedures prescribed by and pursuant to section twelve."

G. L. c. 151A, § 14(*n*)(1). Because there is no evidence as to whether or when DET notified ICBM/TJV of the transfer of its account to National, it is unclear whether or not ICBM/TJV forfeited its right to a redetermination.

[8]Although DET argues in its brief that its right to reconsider and then revoke its July 21, 1992, determination that National is a successor employee is governed by G. L. c. 151A, § 12, that section pertains only to redeterminations by the commissioner as to whether "the employing unit was subject or was not subject to this chapter." The issue to be determined in this case is not whether either National or ICBM/TJV was subject to c. 151A, but whether National is a successor employer within the definition of c. 151A, § 14(*n*). As also noted in the board's decision, review in these circumstances takes place pursuant to § 71.

[9]Following Aronson's answer in the negative to the printed question, "Will the Predecessor Remain in Business in Massachusetts?" he noted: "Not in service of [the] Boston School [Department] transportation contract."

sion by the board will be reversed only if it is based upon an error of law or is unsupported by substantial evidence." *Potris* v. *Commissioner of the Dept. of Employment & Training*, 42 Mass. App. Ct. 735, 737-738 (1997). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Goldstein* v. *Board of Registration of Chiropractors*, 426 Mass. 606, 612 (1998), quoting from G. L. c. 30A, § 1(6).

"Because our review role is a limited one, we 'defer to an administrative agency's fact-finding role, including its right to draw reasonable inferences from the facts found.' " *Salem* v. *Massachusetts Commn. Against Discrimination*, 44 Mass. App. Ct. 627, 641 (1998), quoting from *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. 221, 224 (1978). However, "we are not required to affirm the board merely on a finding that the record contains evidence from which a rational mind might draw the desired inference. . . . 'The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.' " *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981), quoting from *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 253 (1966) (other citations omitted).

Aronson's statements in his letter to DET, whether standing alone or "upon consideration of the entire record," see G. L. c. 30A, § 14(7), are insufficient to overcome the certification previously made that National had acquired all of the business of ICBM/TJV. The evidence does not support the conclusions of the board that ICBM/TJV had continued its business after June 30, 1992, and that no transfer of its business had occurred.

The letter contains no information as to what business ICBM/TJV was purportedly conducting after June 30, 1992. At best, it suggests that, although the business of the joint venture had been transferred to National, In City Boston Management might, as a separate entity, continue to seek contracts with other cities for the provision of school transportation services, as it had done in the past.[10]

Mary Sullivan, a DET representative, testified that she was

---

[10]For example, in the letter Aronson suggests that he is entitled to retain the account because in 1989, when "ICBM won a portion of the Boston school bus contract from National . . . ICBM had to begin paying . . . as if these employees were 'new hires.' " National maintains its payroll records in Illinois, and has transportation contracts in Massachusetts with municipalities other than Boston. Unless National's entire business was transferred to In City

unable to confirm information available in DET's records that ICBM/TJV had continued its business after June 30, 1992. She testified that, in conversation with Aronson prior to the redetermination, he indicated that he had lost the school system contract but had other business; Sullivan was unaware of what other employees and assets ICBM/TJV was still claiming it had retained in furtherance of this business. According to the testimony of Richard Jacobs, transportation director for the Boston public schools, there were some billing procedures in connection with the prior school system contract that needed to be completed. Aronson requested the use of the school system's computer, which contained this information, in order to finish billing the city. He also informed Jacobs, apparently in connection with this follow-up billing, that there were two employees for whom he was attempting to file unemployment taxes. There is no evidence that, beyond the limited activity entailed in completing its billing to the city for work under the prior contract, the joint venture continued to operate.

Aronson concedes in the letter that he filled out form 1110 in order to permit National to assume ICBM/TJV's contribution rate.[11] Aronson's statement concerning his purported intention that ICBM/TJV's "taxpayer number . . . [not] be assigned to National" not only is inconsistent with his filling out the form so that National could assume the ICBM/TJV rate and account, but also is not relevant to the determination under G. L. c. 151A, § 14(n)(1), whether all of the business of ICBM/TJV was transferred to National, or whether the joint venture continued in the conduct of its business.

We turn to consider Aronson's handwritten notation in the

Boston Management (ICBM) in 1989, ICBM would not have been entitled to successor status. *L & CP Corp.* v. *Director of the Div. of Employment Security*, 28 Mass. App. Ct. 961, 962 (1990). The Aronson letter was written on the letterhead of ICBM, with a return address different from that of ICBM/TJV.

[11]Aronson wrote, "[T]he Boston School Department became aware that, as a new employer, National School Bus would be liable for the state unemployment taxes with the limits beginning at zero. It is our understanding that the school department, in discussion with National, expressed its desire that a way be found to circumvent this additional expense . . . . It was as a result of this desire . . . that I signed [form 1110]." This language supports the inference that the transfer of ICBM/TJV's business was agreed to, at least in part, so that duplicative unemployment contributions could be avoided. It appears from the statutory scheme that the avoidance of duplicative contributions is, along with a potentially lower rate, the main reason that an employer would seek successor status.

452        49 Mass. App. Ct. 445 (2000)

National School Bus Service, Inc. *v.* Commissioner of the Department of Employment & Training.

context in which it was made: on a printed form prepared by DET, to be completed by employing units in order to provide written notification to DET that the business of a predecessor employer has been transferred to a successor employer, as required by G.L. c. 151A, § 14(*n*)(1). As we have stated, National completed and signed this form as the "successor," and Aronson, on behalf of ICBM/TJV, completed and signed this form as the "predecessor." In response to the preprinted question on the form, "Did You Acquire the Business of a Predecessor?" the box marked "Yes" is checked. Next to the question, "Did You Acquire ALL or PART of the Business of the Predecessor?" the box "ALL" is checked. In response to the printed question, "Will the Predecessor Remain in Business in Massachusetts?" the answer given was "No." Next to this answer, Aronson made the handwritten notation on which DET relied: "Not in service of Boston School [Department] transportation contract." Above the block where Aronson affixed his signature were preprinted the words, "PREDECESSOR: I hereby certify that all information submitted by the Successor is true in accordance with the transfer." Taken together, the statements on the form provide clear indication that ICBM/TJV and National were asserting that National had acquired all of ICBM/TJV's trade or business.

Aronson's handwritten notation does nothing more than confirm information provided elsewhere on the form that the business or trade being transferred to National is that for which the joint venture was exclusively created: the provision of services necessary to perform the contract awarded to it by the school system. See note 13, *infra*.

Neither Aronson's letter, nor his handwritten notation on form 1110, constitutes evidence which is sufficiently substantial to support the board's determination that the entire organization, trade, or business of ICBM/TJV was not transferred to National.[12]

4. *Principles of law.* The plain language of the statute mandates that successorship is established if "the entire organization, trade or business" of the predecessor is transferred, *"or* substantially all the assets thereof." G. L. c. 151A,

---

[12]The board made additional findings which are not disputed, but since they are either insufficient to support the determination that National's successor status was properly revoked, or not relevant to that determination, we do not discuss them.

§ 14($n$)(1) (emphasis added). In this case the transferring employer, ICBM/TJV, had no assets to transfer; nonetheless, successorship may be warranted if all of the "organization, trade or business" of the joint venture was transferred to National. *Ibid.* Such is the case here.

The absence of information concerning ICBM/TJV's alleged ongoing business activity, coupled with the undisputed fact that the joint venture[13] was created for the exclusive purpose of securing and performing the school system's transportation contract, which ended June 30, 1992, suggests that ICBM/TJV left itself "an empty shell," but not conducting any meaningful business activity. See *L & CP Corp.* v. *Director of the Div. of Employment Security*, 28 Mass. App. Ct. 961, 962-963 (1990). Therefore, whether ICBM/TJV dissolved as a legal entity is not determinative.

Based on the evidence before the board — that both ICBM/TJV and National had certified that a transfer of all of the business of one to the other had taken place; that all of the business previously conducted by ICBM/TJV was, after June 30, 1992, conducted by National; that the active management, as compared to the executive management, was unchanged; that the work was done by substantially the same employees; and that, at least with respect to the union bus drivers, the work was done on the same terms and at the same salaries — we conclude that National's successor status was improperly revoked, and that the original transfer to National of the benefits acquired by ICBM/TJV under chapter 151A must be reinstated as of July 1, 1992. See *Bartels* v. *Director of the Div. of Employment Security*, 326 Mass. 1, 3 (1950). See also *CRE Restaurant Co.* v. *Department of Economic Security*, 353 N.W.2d 231, 233 (Minn. Ct. App. 1984).

Accordingly, the judgment is reversed, and the case is remanded to the Boston Municipal Court for the entry of a new judgment reversing the decision of the board and reinstating

---

[13]We have described joint venture as similar to a partnership; it differs from a partnership in that it is ordinarily limited to a single enterprise. *Shain Inv. Co.* v. *Cohen*, 15 Mass. App. Ct. 4, 7 (1982). The single enterprise in which ICBM/TJV was involved was the management and maintenance of the school system's pupil transportation services. It was the business of this enterprise, and not the business of ICBM or Transcomm, which was transferred to National.

National as a successor to ICBM/TJV effective as of July 1, 1992.

*So ordered.*