MARIAN C. CURTIS *vs.* COMMISSIONER OF THE DIVISION OF
UNEMPLOYMENT ASSISTANCE & another[1]
(and two companion cases[2]).

Nos. 06-P-144, 06-P-242, & 06-P-354.

Plymouth. November 2, 2006. - March 27, 2007.

Present: LENK, SMITH, & COHEN, JJ.

*Employment Security,* Voluntary unemployment.

Substantial evidence supported separate decisions of the board of review of
the division of unemployment assistance (board) denying two respective
employees' applications for unemployment benefits after leaving their jobs
in return for a so-called "voluntary separation package" (VSP), where the
employees departed voluntarily, without reasonable belief that they would
soon be laid off if they did not accept the VSP, and where nothing in the
cases raised any question that employer-created uncertainty prevented the
employees from making a realistic assessment of their risk of imminent
layoff [519-522]; however, with regard to the board's denial of unemploy-
ment benefits to a third employee who was offered a VSP, a question
existed whether the employer substantially hindered the employee's ability
to make a realistic assessment of the likelihood that she would soon be
involuntarily separated, requiring further findings by the board on the issue
whether the employee had "good cause" to elect the VSP [522-525].

CIVIL ACTION commenced in the Plymouth Division of the
District Court Department on May 3, 2004.

The cases were heard by *Thomas F. Brownell,* J.

CIVIL ACTION commenced in the Boston Municipal Court
Department on July 16, 2004.

The case was heard by *Raymond C. Dougan.*

CIVIL ACTION commenced in the Boston Municipal Court
Department on July 16, 2004.

[1]Verizon of New England, Inc.

[2]George R. Gaudin *vs.* Commissioner of the Division of Unemployment As-
sistance & another; Nancy Gaudin *vs.* Commissioner of the Division of
Unemployment Assistance & another. Although the three cases are not
consolidated, they were heard together.

The case was heard by *Raymond C. Dougan.*

*Eugene R. Richard* for the plaintiffs.

*Neil P. Olson,* Assistant Attorney General, for Commissioner of the Division of Unemployment Assistance.

*Arthur G. Telegen* (*Claudia T. Centomini* with him) for Verizon of New England, Inc.

COHEN, J. In these companion cases, we consider the eligibility of three former employees of Verizon New England, Inc. (Verizon), to receive unemployment compensation benefits after leaving their jobs in return for a so-called "voluntary separation package" (VSP). In each case, the Division of Unemployment Assistance (DUA) denied the employee's application for benefits, the employee appealed to the division's hearings department, and, after hearing, a review examiner affirmed the denial of benefits on the ground that the employee had departed voluntarily, without reasonable belief that he or she would soon be laid off if the VSP was not accepted. See *White* v. *Director of the Div. of Employment Sec.,* 382 Mass. 596, 597-598 (1981) (*White*). In each case, the board of review (board) declined to hear the employee's appeal, thereby making the hearing examiner's decision the final decision of the board. G. L. c. 151A, § 41(*c*). See *Bleich* v. *Maimonides Sch.,* 447 Mass. 38, 39 (2006).

Each of the employees then sought judicial review, pursuant to G. L. c. 151A, § 42. In the case of Marian Curtis, a judge of the Plymouth District Court affirmed the board's decision. In the cases of George and Nancy Gaudin,[3] a married couple employed in different units at Verizon, a judge of the Boston Municipal Court affirmed the denial of benefits to George, but reversed as to Nancy, concluding that the board's decision to deny her benefits was not supported by substantial evidence. Curtis and George have appealed to this court from the decisions denying their claims, and Verizon has appealed from the decision reversing the denial of Nancy's claim.

While these appeals were pending, we issued our opinion in *State Street Bank & Trust Co.* v. *Deputy Director of the Div. of Employment & Training,* 66 Mass. App. Ct. 1 (2006) (*State*

---

[3]We refer to the Gaudins by their first names to avoid confusion.

*Street*). In *State Street*, we discussed two different situations in which the statute, G. L. c. 151A, § 25(*e*)(1), as amended through St. 1992, c. 26, § 19,[4] allowed an employee to receive unemployment compensation benefits despite having accepted a VSP. The first situation involved an "involuntary" departure. We reiterated the principle established in *White, supra*, that, in such a case, benefits remain available if the employee acted under a reasonable belief that he soon would be terminated if he did not accept the employer's offer, because, in such a case, the employee's departure cannot fairly be regarded as "voluntary." *State Street, supra* at 8-9. The second situation involved a "voluntary" departure. We explained in that regard, that even if the employee did not terminate employment involuntarily within the meaning of *White*, the employee may still be found to have departed "for good cause attributable to [the employer]" if, in the execution of its exit incentive plan, the employer "substantially hindered the ability of [the] employee[] to make a realistic assessment of the likelihood that [he] would be involuntarily separated" if the employee were not to accept the employer's offer. *State Street, supra* at 11.

In *State Street*, the employer had announced a plan for reduction in force that contained both voluntary and involuntary components, but failed to disclose how employees would be chosen for layoff, or to provide information as to how the VSP was proceeding. Thus, by design, the employer created an environment in which "employees were required to guess, speculate, and cobble together as best they could information on which to base a decision as to whether they would be involuntarily separated." *Id.* at 11. Because employer-created

---

[4]That section provides in relevant part that "[n]o benefits shall be paid to an individual under this chapter for . . . the period of unemployment next ensuing and until the individual has had at least eight weeks of work and in each of said weeks has earned an amount equivalent to or in excess of the individual's weekly benefit amount after the individual has left work (1) voluntarily unless the employee establishes by substantial and credible evidence that he had good cause for leaving attributable to the employing unit or its agent . . . . An individual shall not be disqualified from receiving benefits under the provisions of this subsection, if such individual establishes to the satisfaction of the commissioner that his reasons for leaving were for such an urgent, compelling and necessitous nature as to make his separation involuntary."

uncertainty left the employees in *State Street* unable to realistically assess whether or not they would lose their jobs under the involuntary component of the reduction in force plan, we concluded that they had "good cause to adopt the mitigating strategy of accepting the VSP and leaving." *Id.* at 11-12.

In the present cases, because neither the board nor the judges below had the benefit of the *State Street* decision, the sole focus was on the question of voluntariness under the *White* test. As we explain below, we conclude that the board's determinations on the issue of voluntariness were supported by substantial evidence in all three cases. We also conclude that in Curtis's and George's cases the facts would not warrant a finding on the alternative ground of "good cause" as articulated in *State Street.* We think, however, that Nancy's case raises a question whether Verizon substantially hindered her ability to make a realistic assessment of the likelihood that she would soon be involuntarily separated, and that her case must be remanded to the board for further findings on the issue of "good cause."

*Discussion.* In considering appeals of this type, we are not bound by, nor do we give deference to, the decision of the trial court. "Our function is to review the decision of the board[,]" *Kowalski* v. *Director of the Div. of Employment Sec.,* 391 Mass. 1005, 1006 (1984), which is the sole finder of the facts. *Guarino* v. *Director of the Div. of Employment Sec.,* 393 Mass. 89, 92 (1984). In reviewing a decision of the board, we determine whether the decision "contains sufficient findings to demonstrate that correct legal principles were applied, and . . . review the record to determine whether those findings are supported by substantial evidence." *Ibid.* See *Bleich* v. *Maimonides Sch.,* 447 Mass. at 43.

We begin our analysis by summarizing the undisputed background facts common to all three cases, before turning to each case individually. In the fall of 2003, Verizon sought to reduce its workforce by announcing a program whereby employees who left voluntarily, and signed a release, would receive separation payments and other benefits.[5] So far as it appears, Verizon made no statement that layoffs were imminent or

---

[5]Exit incentives of this type have become a common alternative to outright layoffs. According to one treatise, there are three principal reasons why this is

dependent upon the level of employee participation in the program. It had no target or cap on the number of eligible employees; all applicants were to be accepted, and none rejected.

Verizon instructed managers not to influence subordinate employees in their decision to elect or decline participation in the program, and it limited the information that managers could provide to subordinates. As the program progressed, however, Verizon let it be known that the program was "oversubscribed," and that employees could rescind their election.

1. *Marian Curtis.* The board found that Curtis had worked as a manager in Verizon's Telesector Resources Group for nearly thirty-one years when she accepted the VSP on November 21, 2003. Curtis, who was not a union employee, thought there was a "possibility" that she would be laid off if not enough people took advantage of the program. However, the board found that Curtis did not have any reason to believe that she soon would be targeted for layoff. The board determined that her motivation for accepting the package was that she was afraid she would have more responsibilities placed upon her if other managers took the offer. Curtis had been told by her supervisor that the company would not be replacing managers who left on account of the VSP and that the remaining managers in the area would have to take on more responsibility. She also knew that when a manager took a previously offered separation package, he was not replaced, and other managers had to absorb the workload.

We infer from the board's findings that some of Curtis's testimony either was not credited by the review examiner or was rejected as too speculative or attenuated. Evidently, the review examiner was not swayed by Curtis's testimony that an increase in her workload would place her at risk of losing her job because she would have trouble keeping up and would receive bad appraisals. We defer to the board on issues of credibility and the weight of evidence, see *Leone* v. *Director of the*

so: "1. They are more humane than layoffs and cause less damage to employee morale. 2. The employer has a restrictive policy on layoffs or is constrained from laying off employees by collective bargaining agreements or related labor concerns. 3. Exit incentives often secure the voluntary resignation of individuals the employer wants to lay off but whom the employer cannot lay off legally or safely." Lipsig, Downsizing: Law & Practice 94-95 (BNA 1996 & Supp. 1999).

*Div. of Employment Sec.,* 397 Mass. 728, 731 (1986), and will not displace the board's choice between conflicting views. See *Rioni* v. *Director of the Div. of Employment Sec.,* 392 Mass. 436, 438 (1984). The board was entitled to conclude that fear of losing her job was not the true reason for Curtis's acceptance of the VSP, or that, even if it was the true reason, she lacked an objectively reasonable belief that involuntary termination was imminent if she did not take the offer.

Upon review of the record as a whole, we are satisfied that the board's findings in Curtis's case are supported by substantial evidence and that Curtis did not meet the requirements of the *White* test. Moreover, because nothing in this case raises any question that employer-created uncertainty prevented Curtis from making a realistic assessment of her risk of imminent layoff, we conclude that a finding of "good cause" as articulated in *State Street* would not be warranted.

2. *George Gaudin.* The board found that George Gaudin, a Verizon employee for more than nineteen years, was working as a central office technician in the fall of 2003, when the VSP was offered. He was a union employee, and was sixtieth in seniority out of one hundred employees in his department. George assumed that if he did not elect the VSP, he eventually would be laid off, based upon a statement from management that jobs in his department were going to be transferred to Texas at some unspecified time in the future, and the fact that Verizon had declared a "surplus" of union employees when it announced the VSP.[6] However, as George was aware, the union contract in effect when the VSP was offered had a "no layoff" provision that protected union employees from losing their jobs or being involuntarily relocated more than thirty-five miles away from their present place of employment.[7] Accordingly, even if George's position were relocated as George feared, Veri-

---

[6]The union contract provided that a "surplus" must be declared before Verizon could offer a VSP to its union employees. George appears to have misunderstood the significance of this declaration, interpreting it as a prelude to layoffs.

[7]The record reflects that there was an exception for extreme situations not relevant here. According to a "Job Security Letter" entered in evidence, Verizon could be relieved of the prohibition on layoffs if a reduction in force was compelled by an "external event," i.e., an event not within Verizon's control

zon would have been obliged to find him a position with equal pay and the same job duties, within thirty-five miles of his former work location.

On these facts, which are supported by substantial evidence, the board was entitled to conclude that George did not have an objectively reasonable belief that he would soon be laid off, and that he therefore was ineligible for benefits under the *White* test. Nor would George have been eligible for benefits under the alternative "good cause" rationale articulated in *State Street*. Although George testified, and the board found, that George was unable to obtain additional information about his future employment status from his supervisor, and that Verizon had limited the kind of information that managers could give to employees about the VSP, there is nothing in the record to suggest that Verizon gave George or other union employees any reason to doubt that they would be protected from involuntary termination by their contract. There being no basis to infer that George was hindered by Verizon from making a realistic assessment of his risk of imminent layoff, a finding of "good cause" would not be warranted.

3. *Nancy Gaudin.* The board found that Nancy had worked as an executive assistant in Verizon's Telesector Resources Group for twenty-five years when she accepted the VSP in the fall of 2003. Nancy, who was not a union employee, assumed that if she did not accept the VSP, she eventually would be laid off involuntarily. She reached this conclusion because her department was being consolidated, and she did not know if the particular executive whom she assisted would be promoted or transferred to a distant location. If her boss were to depart, she would be required to look for and find a new position within the company.[8]

The board found further that Verizon did not inform Nancy

---

that is "significant and . . . directly reduces the need for a large number of employees." Should such an "external event" occur, Verizon was required to notify and consult with the union "to determine what, if anything, can be done to avoid a layoff." In this instance, there is no indication that Verizon had declared that an external event required a reduction of force.

[8]Nancy's testimony supported the conclusion that her fortunes were integrally related with those of her boss. She explained that several years earlier, when the executive for whom she worked left Verizon, she had only

that her job was at risk for any reason, or indicate to her the likelihood of her retention or involuntary separation if she did not elect to take the VSP. However, the board also found that, before opting for the VSP, Nancy asked her supervisor about her future employment status. The supervisor informed Nancy that he could not say anything one way or the other, consistent with Verizon's instructions.

The board ultimately concluded that Nancy left her position for two reasons: so she could receive the incentives available through the VSP, but also so she could avoid the possibility of an involuntary layoff. Nevertheless, in applying the *White* test, the board determined that Nancy's fear of imminent loss of her job was based on "speculative notions" and that she did not have a reasonable belief that she would soon be laid off if she did not accept the VSP.

While it is a close question, we think that the board's denial of benefits under the *White* test was supported by substantial evidence. To be sure, there was considerable evidence to support the view that Nancy's job was at risk because of the changes in her department, the potential departure of the executive for whom she worked, and the difficulties she had faced in the past when, after her former boss left, she had to look for a new position in the company. Moreover, given that the company was rapidly downsizing, it was reasonable for her to believe that it would be even more difficult for her to relocate within Verizon than it had been on this prior occasion. Still, we think that the board rationally could find that Nancy's belief that the loss of her job was *imminent* was speculative, as she lacked sufficient information about her own immediate job prospects, or those of the executive for whom she worked, from which to draw that conclusion. On that basis, and mindful of our deferential standard of review, we accept the board's decision that Nancy did not meet the criteria of *White*.

Nevertheless, for much the same reason — insufficient information — it could be found on this record that Nancy had "good cause" to elect the VSP. Nancy testified that after the

thirty days to find another job within the company, and did not obtain a position until two days before the deadline. She believed that relocating within the company would be even more difficult in the future.

VSP was offered, a manager left her a voice message asking if she was going to volunteer "because they needed to reduce force." Concerned that her receipt of this message suggested that she was particularly vulnerable to termination if she did not accept the VSP, she contacted her supervisor and was told that "he could not guarantee [ ] whether [she] would or would not have a job."

As the board found, Verizon had instructed its managers not to give individual employees information about their job status. While Verizon may have had good reason for such a prohibition, in Nancy's case, it could be found that her supervisor's cryptic answer, and her inability to obtain further information, hindered her ability to make a realistic decision about whether to accept the VSP. Under these circumstances, we think that remand is necessary so that Nancy's claim may be considered under the "good cause" analysis set out in *State Street.*

Verizon argues that *State Street* is distinguishable and ought not be applied to Nancy's case, because, unlike the employer in *State Street*, Verizon made no statement that layoffs were imminent or dependent upon the level of employee participation in the program. We think, however, that if an employer's actions, including but not limited to its response to concerns raised by the employee, create an environment where it is impossible for the employee to form a reasonable belief one way or the other as to whether or not she soon will be laid off if she does not take the VSP, then that employee is no better equipped to decide whether to accept the VSP than were the employees in *State Street.* In both situations, the employees have "good cause to adopt the mitigating strategy of accepting the VSP and leaving," *State Street, supra* at 11-12, because employer-created uncertainty has left them unable to realistically assess their risk.

Verizon also argues that *State Street* is distinguishable because, unlike the employees in State Street, Nancy learned from her employer that the program was oversubscribed, and she had the opportunity to rescind her participation, knowing that there would be positions available to her. If this turns out to be the case, then we agree that Nancy's election of the VSP would not be the product of employer-created uncertainty, and the "good cause" rationale would not apply. However, the

evidence is not as clear as Verizon suggests,[9] and there were no findings to this effect. Whether Nancy knew that she would have a job if she withdrew from participation in the program is an undecided question that must be considered on remand.

*Conclusion.* The judgments of the District Court in the Marian Curtis case and of the Boston Municipal Court in the George Gaudin case are affirmed. The judgment of the Boston Municipal Court in Nancy Gaudin's case is vacated, and a new judgment shall enter remanding the case to the board of review for further proceedings consistent with this opinion. G. L. c. 30A, § 14(7). G. L. c. 151A, § 42. The board may rest on the record in considering the issue of "good cause." Alternatively, the board may take additional evidence or send this matter back to the review examiner for findings and a determination on the evidence in the record or for an evidentiary hearing on the issue. See *Norfolk County Retirement Sys.* v. *Director of the Dept. of Labor & Workforce Dev.*, 66 Mass. App. Ct. 759, 770 (2006).[10]

*So ordered.*

---

[9]Nancy testified that even though she was aware that the program was oversubscribed and she could have rescinded her acceptance of the VSP, her future employment remained questionable, since she still did not know what would happen to her boss.

[10]Because, in *State Street*, *supra* at 8-9, we already have considered the employees' arguments based upon *Morillo* v. *Director of the Div. of Employment Sec.*, 394 Mass. 765 (1985), we do not address them here. Suffice it to say that our precedents do not require that any employee who accepts a separation package designed and implemented by his employer to reduce the employer's workforce be considered to have left "involuntarily" or for "good cause." *State Street*, *supra* at 8.