CITY OF BOSTON *vs.* GEORGE DOWNING & another.[1]

No. 06-P-1725.

Suffolk. November 9, 2007. - October 31, 2008.

Present: PERRETTA, GELINAS, & KANTROWITZ, JJ.[2]

*Municipal Corporations,* Police. *Police Officer. Employment Security,* Eligibility for benefits. *Administrative Law,* Judicial review, Substantial evidence.

A Boston Municipal Court judge erred in reversing a decision of the board of
  review of the division of unemployment assistance (board) granting the ap-
  plication for unemployment compensation benefits of a police officer who
  was discharged on the ground that he violated the Boston police department's
  substance abuse policy, where substantial evidence supported the board's
  decision, which rested on the hearing examiner's finding that the officer
  had not ingested cocaine during his employment, in keeping with the of-
  ficer's own testimony, his submission to two independent drug tests yield-
  ing negative results, his refusal to enter into a drug rehabilitation agree-
  ment knowing that his refusal would result in his discharge, and the absence
  of any history of drug use. [82-84]

CIVIL ACTION commenced in the Central Division of the Boston
Municipal Court Department on November 22, 2004.

The case was heard by *Raymond G. Dougan, Jr.,* J.

*Patrick N. Bryant* for George Downing.

*David M. Jellinek* for the plaintiff.

PERRETTA, J. After the board of review (board) of the division
of unemployment assistance (DUA) affirmed a review exam-
iner's (examiner) granting George Downing's application for
unemployment compensation benefits, the city of Boston (city)
sought review of the board's decision. A judge of the Boston
Municipal Court Department reversed the board's decision.

[1]Commissioner of the division of unemployment assistance.

[2]Judge Gelinas participated in the deliberation on this case prior to his
retirement.

Downing's appeal from that judgment presents the question whether the board's decision was supported by substantial evidence. Concluding that it was, we reverse the judgment.

1. *Procedural history*. After the Boston police department (department) discharged Downing from his employment as a police officer on the ground that he used cocaine in violation of the department's substance abuse policy as set out in its rule 111, Downing applied for unemployment compensation benefits pursuant to G. L. c. 151A. Initially, Downing's application was denied on the basis that his discharge was the result of "a knowing violation of a reasonable and uniformly enforced rule or policy." See G. L. c. 151A, § 25(*e*)(2), as appearing in St. 1992, c. 26, § 19.[3] Downing then requested a hearing on the denial of his claim pursuant to G. L. c. 151A, § 39(*b*). After hearing, the examiner reversed the denial of benefits based in part upon her finding that Downing had not ingested cocaine during his employment.[4] The board denied the city's appeal of the examiner's decision, rendering it a final decision of the board. See G. L. c. 151A, § 41(*c*). See *Curtis* v. *Commissioner of the Div. of Unemployment Assistance*, 68 Mass. App. Ct. 516, 517 (2007). Concluding that the board's decision was unsupported by substantial evidence, a judge of the Boston Municipal Court Department reversed.

2. *The facts*. We summarize the factual findings of the examiner, later adopted by the board, all of which are supported

---

[3]General Laws c. 151A, § 25, provides in part:

"[N]o benefits shall be paid to an individual under this chapter . . . (*e*) . . . after the individual has left work . . . (2) by discharge shown . . . by substantial and credible evidence to be attributable to deliberate misconduct in wilful disregard of the employing unit's interest, or to a knowing violation of a reasonable and uniformly enforced rule or policy of the employer."

See *Still* v. *Commissioner of the Dept. of Employment & Training*, 423 Mass. 805, 809 (1996), wherein the court stated that "the grounds for disqualification [set forth] in § 25(*e*)(2) are considered to be exceptions or defenses to an eligible employee's right to benefits, and the burdens of production and persuasion rest with the employer."

[4]The examiner also found that rule 111 was not "uniformly enforced." Because we conclude that the board's decision is adequately supported by the examiner's finding that Downing had not used cocaine during his employment, we do not reach the question of uniform enforcement of rule 111.

by the evidence. We supplement our recitation with undisputed evidence appearing in the administrative record.

Downing was employed as a Boston police officer from March, 1995, until his discharge on January 6, 2004. In 2003, rule 111 of the department's rules and procedures prohibited "sworn personnel" from using "controlled substances," including cocaine, at any time during their employment, on or off duty. It is undisputed that Downing was subject to and aware of rule 111.[5]

a. *The rule.* Rule 111 requires officers to submit to an annual drug test by hair analysis. The test is performed within thirty calendar days of the officer's birthday. Positive laboratory results are reviewed by a medical review officer (MRO) who has the duty to interpret positive laboratory results in light of the officer's individual medical and other relevant circumstances, to investigate whether alternative explanations for the positive test result exist and, should no such explanations exist, to verify the positive result.

Should the drug test yield a confirmed positive result, an officer may request a second, so-called "safety-net" test. If the "safety-net" test is negative, the officer's prior positive test result is expunged from his internal affairs file. It is the department's view that the sole purpose of the "safety-net" test is to confirm the presence of the drug detected in the officer's prior hair sample.

Rule 111 further provides that "sworn personnel" who receive verified positive test results for "*illicit drugs* will be subject to termination." Officers for whom a positive test result constitutes their first and only violation of the rule must be afforded the opportunity to enter into a drug rehabilitation agreement with the department to retain their employment. The drug rehabilitation agreement provides that an officer is subject to a forty-five day suspension without pay, is assigned to administrative duties until determined to be able to carry a weapon safely, is obligated to participate in a drug rehabilitation program, and, upon a return to full duties, must submit to unannounced drug testing for a period of thirty-six months.

b. *The testing procedures.* At all times relevant to this action,

---

[5]Rule 111 was collectively bargained for and approved by the Boston Police Patrolmen's Association, the patrol officers' union, of which Downing was a member.

hair drug tests were processed by a California laboratory, Psyche-medics Corporation (Psychemedics), pursuant to a contract with the department. Psychemedics reported tests as positive if its analysis indicated the presence of a substance in designed minimum concentrations (cutoff levels), coupled with the presence of specified metabolites. Cutoff levels were set by Psychemedics. A senior scientist employed by Psychemedics, Thomas Cairns, explained in an affidavit submitted to the examiner that the cutoff levels are used by Psychemedics to distinguish those quantities of cocaine considered to be indicative of intentional ingestion from quantities that indicate unknowing or passive inhalation or absorption. Where an analysis indicated the presence of cocaine in a concentration below the cutoff level, Psychemedics reported the test result as negative. Prior to the incident at issue, Downing had not tested positive during the department's annual drug screening.

On May 7, 2003, the date upon which a hair sample was obtained from Downing, the cutoff level for an annual test was 5 ng/10 mg. That is, five nanograms of cocaine per ten milligrams of hair. Laboratory analysis of his hair sample, subsequently verified by an MRO, yielded a result of 5.8 ng/10 mg.

On May 13, 2003, Downing submitted a hair sample to an independent laboratory for drug testing. The test was negative for cocaine based upon a cutoff level equivalent to 3 ng/10 mg. On May 16, 2003, Downing again submitted a hair sample to an independent laboratory for drug testing. This test resulted in negative for cocaine based upon a cutoff level of 4.35 ng/10 mg. On the same date, Downing submitted a hair sample for purposes of a "safety-net" test. The "safety-net" test result showed 1.9 ng/10 mg. The cutoff level for the "safety-net" test was .2 ng/10 mg.[6]

When Downing declined the opportunity to enter into a drug rehabilitation agreement, he was terminated for cause, effective January 6, 2004. In his sworn testimony before the examiner, Downing maintained that he had not used cocaine at any time

[6]The cutoff level for a "safety-net" test was revised downward from 2 ng/10 mg to .2 ng/10 mg at some time during Downing's employment. As stated by Cairns in his affidavit, the "safety-net" test "employs reduced cut-offs to account for lapse of time between collection of the original and the follow-up samples."

during his employment. He testified that he had refused to enter into the drug rehabilitation agreement because he would not admit to something that he had not done even though an admission would allow him to maintain his employment with the department. He also pointed out that a false admission to drug use would constitute a violation of the department's rules and policies regarding the truthfulness of its officers.

3. *The board's decision.* As earlier related, the board adopted the examiner's findings. On the issue of drug use, the examiner made detailed findings relative to the department's drug testing program. In those findings, the examiner accepted the fact that the Psychemedics analysis showing a positive test result was evidence tending to support the department's position that Downing had used cocaine in violation of its substance abuse policy.

Nonetheless, the examiner's decision demonstrates that she accepted Downing's testimony that he had not used cocaine during his employment with the department. The examiner explicitly credited Downing's testimony because, as found by her, it was supported and bolstered by the following facts. First, Downing twice promptly had submitted himself to further and independent drug testing at his own expense, acts she concluded would be improbable had he in fact used drugs. Second, those two independent tests proved negative as to cocaine use. Third, Downing had refused to enter into a drug rehabilitation agreement even though doing so would have permitted him to remain employed by the department.

Downing's appeal from the reversal of the board's decision by a judge of the Boston Municipal Court Department brings before us the question whether the board's decision is supported by substantial evidence.

4. *Discussion.* Our review of the board's decision is governed by the standards set out in G. L. c. 30A, § 14(7), see G. L. c. 151A, § 42, pursuant to which the board's decision will be set aside if it is unsupported by substantial evidence. See G. L. c. 30A, § 14(7)(*e*). See also *Boston* v. *Deputy Director of the Div. of Employment & Training,* 59 Mass. App. Ct. 225, 228 (2003). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion," see

G. L. c. 30A, § 1(6), inserted by St. 1954, c. 681, § 1, taking into account "any evidence in the record that detracts from the agency's conclusion." *Boston Gas Co.* v. *Department of Telecommunications & Energy*, 436 Mass. 233, 237 (2002). When conducting a substantial evidence review, "[a] court may not displace an administrative board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Rioni* v. *Director of the Div. of Employment Security*, 392 Mass. 436, 438 (1984), quoting from *Labor Relations Commn.* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971). See *Curtis* v. *Commissioner of the Div. of Unemployment Assistance*, 68 Mass. App. Ct. at 520-521. The board's findings and conclusions will be set aside, however, if "the evidence points to no felt or appreciable probability of the contrary." *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981), quoting from *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 92 (1968). See *Cobble* v. *Commissioner of the Dept. of Social Servs.*, 430 Mass. 385, 390-391 (1999).

We acknowledge that the examiner could have inferred from the Psychemedics test result that Downing had ingested cocaine. However, the examiner found and concluded otherwise based upon her acceptance of Downing's testimony which, in her view, was supported and bolstered by his prompt submission to two independent drug tests, his refusal to enter into a drug rehabilitation agreement knowing that his refusal would result in his discharge, and the absence of any history of drug use.

In arguing that the weight of the evidence ran overwhelmingly to the contrary of the examiner's finding, the city asserts that the department's positive test results were entitled to "more credence" than the evidence presented by Downing, including his negative test results.[7] To support its argument, the city relies on evidence tending to show that the Psychemedics tests provide an accurate and reliable scientific methodology for identifying drug use while identifying various factors that it contends detract from the probative value of Downing's independent test results. Because this argument is directed to the weight of the evidence, it is unavailing.

---

[7]The city does not claim that the examiner erred or exceeded her authority in considering Downing's independent test results.

See *Keough* v. *Director of the Div. of Employment Security*, 370 Mass. 1, 3 (1976); *Rioni* v. *Director of the Div. of Employment Security*, 392 Mass. at 438; *Curtis* v. *Commissioner of the Div. of Unemployment Assistance*, 68 Mass. App. Ct. at 519.

Equally unavailing is the city's challenge to the inferences the examiner drew from the evidence showing that Downing sought independent drug testing and refused to sign a drug rehabilitation agreement. The city argues: (1) an officer who tested positive during an annual screening has nothing to lose in seeking independent drug tests that might provide a basis to contest the department's results; and (2) Downing's refusal to admit to drug use and enter into a drug rehabilitation agreement is characteristic of drug abusers.[8] As previously explained, application of the substantial evidence test does not empower us to make a de novo determination of the facts, to make credibility choices, or to draw inferences different from those drawn by the examiner on the facts found.

5. *Conclusion.* It follows from all that we have said that the judgment of the Boston Municipal Court Department is reversed and a new judgment is to enter affirming the decision of the board.

*So ordered.*

---

[8]Interestingly, the city's argument on this point arguably would render the protections provided an officer under rule 111, discussed *supra*, somewhat illusory.