428                    74 Mass. App. Ct. 428 (2009)

Lincoln Pharmacy of Milford, Inc. *v.* Commissioner of the Division of Unemployment Assistance.

## Lincoln Pharmacy of Milford, Inc. *vs.* Commissioner of the Division of Unemployment Assistance.

No. 08-P-1070.

Worcester. February 9, 2009. - June 18, 2009.

Present: McHugh, Mills, & Graham, JJ.

*Employment Security,* Judicial review. *Administrative Law,* Judicial review, Substantial evidence. *Labor,* Wages. *Notice,* Administrative hearing. *Words.* "Payrolling."

A District Court judge did not err in affirming a determination of the board of review (board) of the division of unemployment assistance that the plaintiff corporation had underpaid its unemployment contributions for a certain period, where substantial evidence supported the board's findings that the plaintiff was the sole employer for all employees reported as employed by either the plaintiff or another corporation under common ownership, and that the sole shareholder of both corporations had intentionally shifted the payroll to the account of the corporation with the lower contribution rate to avoid paying at a higher rate [431-434]; and where there was no merit to the plaintiff's contentions that its conduct constituted permissible tax avoidance [434-435] or that the board based its assessment against the employer on an improper retroactive application of an amendment to G. L. c. 151A [435-436].

A party was not entitled to raise an argument on appeal that could have been raised below, but was not. [436-437]

Defects, if any, contained in a notice of hearing issued by the division of unemployment assistance (division), which did not accurately state the sections of G. L. c. 151A which the division sought to apply to an employer, did not result in prejudice to the employer, who was aware, due to an earlier letter from the division, of the issues that would be discussed at the hearing. [437-438]

Civil action commenced in the Milford Division of the District Court Department on September 22, 2005.

The case was heard by *Robert B. Calagione,* J.

*David F. Grunebaum* for the plaintiff.

*Neil P. Olson,* Assistant Attorney General, for the defendant.

Graham, J. This appeal arises from a determination of the board of review (board) of the division of unemployment assist-

ance (division) that the plaintiff, Lincoln Pharmacy of Milford, Inc. (LP-Milford), had underpaid its unemployment contributions for the period from the fourth quarter of 1998 through the first quarter of 2004. The total assessment against LP-Milford, including interest, was $83,043.05. A District Court judge affirmed the board's decision in a review pursuant to G. L. c. 30A, § 14.

On appeal, LP-Milford claims that (1) the board's decision was not supported by substantial evidence; (2) the assessment against LP-Milford was based upon an improper retroactive application of an amendment to G. L. c. 151A, the "Unemployment Insurance Law," G. L. c. 151A, § 74, as amended through St. 2003, c. 26, § 588; (3) the board's chairman engaged in impermissible witness coaching at a hearing; and (4) the division's notice of hearing, dated March 3, 2005, was defective. We affirm.

1. *Background.* LP-Milford and Lincoln Pharmacy of Westboro (LP-Westboro) are Massachusetts corporations with common ownership. Richard Aronovitz is the sole shareholder of both corporations and holds the titles of president, treasurer, clerk, and director with each. LP-Milford was incorporated in 1977 to operate drug stores, and at one point, it operated seven locations with approximately 200 employees. At the time of the hearings before the board, however, LP-Milford only operated two locations, which were liquor stores instead of drug stores.

LP-Milford and LP-Westboro were both registered as employers under the Unemployment Insurance Law, formerly known as the Employment and Training Law. The division assigned separate employer numbers to LP-Milford and LP-Westboro. At the beginning of each calendar year, the division assigned each employer a separate and different contribution (tax) rate as required by G. L. c. 151A, §§ 8 and 14. Under G. L. c. 151A, § 14, an employer makes contributions to the unemployment trust fund according to its "experience rate," which is computed annually, based on the employer's payroll in the prior twelve months, the payments made to the fund in the past, and the payments made to its former employees for unemployment benefits. Because the experience rate is recalculated on an annual basis, having a lower payroll amount in a given year will ordinarily result in a lower experience rate for the following year.

In 2002, the division's research department noticed that,

when filing their contribution reports pursuant to G. L. c. 151A, § 14, and 430 Code Mass. Regs. § 5.03 (1994, 1997), LP-Milford and LP-Westboro, two corporations with common ownership, were shifting almost their entire payroll, on an annual basis, to the corporation assigned the lower contribution rate. The following table illustrates the payroll-shifting that occurred between the two corporations.

| LP-MILFORD | | | LP-WESTBORO | | |
|---|---|---|---|---|---|
| YEAR | TAX RATE | REPORTED PAYROLL ($) | YEAR | TAX RATE | REPORTED PAYROLL ($) |
| 2002 | 2.425 | 1,810,662 | 2002 | 2.725 | 191,018 |
| 2001 | 3.725 | 107,802 | 2001 | 1.325 | 2,469,875 |
| 2000 | 1.925 | 2,306,547 | 2000 | 2.925 | 116,289 |
| 1999 | 3.325 | 84,262 | 1999 | 1.325 | 2,098,087 |
| 1998 | 2.3 | 1,859,495 | 1998 | 3.4 | 87,303 |
| 1997 | 4.4 | 140,090 | 1997 | 2.6 | 1,535,579 |
| 1996 | 2.7 | 1,321,000 | 1996 | 3.4 | 103,638 |

In July and September of 2002, the division conducted an audit during which it examined the financial records of both corporations, including checking accounts, payroll records, W-2 forms, Federal unemployment tax returns (forms 940), and disbursement journals. After conducting the audit, the division combined the accounts of the two corporations into one account in LP-Milford's name, and recalculated new contribution rates applicable to the consolidated account. On September 27, 2004, the division mailed LP-Milford a "statement of account" for overdue contributions, overdue workforce training fund contributions, and interest, in the amount of $105,614.03, for the period from the first quarter of 1997 through the first quarter of 2004. LP-Milford refused to pay the adjusted amount.

On October 13, 2004, the division mailed LP-Milford a "notice of certified assessment" pursuant to G. L. c. 151A, § 15(*e*), which contained a revised assessment totaling $83,043.05 for the period from the fourth quarter of 1998 through the first quarter of 2004, with interest computed through October 13, 2004.[1] Upon receiving the notice, LP-Milford filed a timely

---

[1] A six-year statute of limitations prevented the division from making an

petition for reassessment with the division, claiming that the notice was erroneous. After a hearing, a review examiner issued a decision affirming the total due on the notice. LP-Milford filed an application for further review with the board. After hearings, the board upheld the review examiner's decision.

2. *Standard of review.* A party aggrieved by the board's final decision may appeal to the District Court pursuant to G. L. c. 151A, § 42. Judicial review of the board's decision is in accordance with the standards set forth in G. L. c. 30A, § 14(7). See G. L. c. 151A, § 42. Review is confined to the administrative record. See G. L. c. 30A, § 14(5). The burden is on the appealing party to demonstrate the invalidity of the board's decision. See *Merisme* v. *Board of Appeals on Motor Vehicle Liab. Policies & Bonds,* 27 Mass. App. Ct. 470, 474 (1989). We review the board's decision to determine whether it was unsupported by substantial evidence, arbitrary, capricious, or otherwise based on an error of law. See *Massachusetts Inst. of Technology* v. *Department of Pub. Util.,* 425 Mass. 856, 867-868 (1997). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6), inserted by St. 1954, c. 681, § 1. The applicable standard of review is "highly deferential to the agency" and requires the reviewing court to accord "due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." *Hotchkiss* v. *State Racing Commn.,* 45 Mass. App. Ct. 684, 695-696 (1998), quoting from *Lisbon* v. *Contributory Retirement Appeal Bd.,* 41 Mass. App. Ct. 246, 257-258 (1996).

3. *Substantial evidence.* LP-Milford argues that the board's findings are not supported by substantial evidence. The board concluded that (1) LP-Milford was the sole employer for all employees reported as employed by either LP-Milford or LP-Westboro from 1994 through the first quarter of 2004 and (2) Aronovitz intentionally shifted the payroll to the account of the corporation with the lower contribution rate to avoid paying at a higher contribution rate. We conclude that the board's findings are supported by substantial evidence.

The board heard the testimony of the auditor from the division

assessment of underpaid contributions for periods before 1998. See G. L. c. 151A, §§ 15(*b*), 15(*e*)(2).

who examined the financial documents of both LP-Milford and LP-Westboro. The auditor found that all wages paid to employees since 1994 were reported within the financial records as having been paid by LP-Milford. She found that all revenue from the operating stores run by LP-Milford were reported as income in LP-Milford's financial records. LP-Westboro's financial records, on the other hand, showed only minimal income for "management fees" and did not show payroll expenses. This evidence supports a finding that LP-Milford was the sole employer of all employees reported under the accounts of either LP-Milford or LP-Westboro from the fourth quarter of 1998 through the first quarter of 2004.

LP-Milford argues that the board used a "double standard" in weighing the evidence because although it discredited Aronovitz's testimony based on Aronovitz's failure to support his testimony with documentary evidence, it credited the testimony of the division's auditor without requiring the auditor to support her testimony with similar documentation. This argument is without merit. At both hearings, the contents of the financial documents reviewed by the division were uncontroverted[2]; LP-Milford refuted only the conclusions made by the division based on the contents of the financial documents. There was no need for the board to require the division to produce the documents where the contents were not in dispute.

We also find no error in the board's determination that Aronovitz's testimony, without supporting documentation, was insufficient to challenge the auditor's findings. At a hearing before the board, Aronovitz explained that the financial documents reviewed by the division did not accurately reflect the payrolls of LP-Milford and LP-Westboro because LP-Milford paid LP-Westboro's employees on LP-Westboro's behalf as permitted under Federal law. It was LP-Milford's burden, then, to produce financial documents that accurately reflected the payrolls of each company. See *Cantres* v. *Director of the Div. of Employ-*

---

[2]On this appeal, there appears to be some dispute about whether LP-Westboro's financial records showed enough revenue to cover the payroll expenses reported to the division as belonging to LP-Westboro. This issue was not argued by the parties during agency proceedings and is not essential to our decision. The crucial fact is that LP-Westboro's financial records showed only minimum income and did not show payroll expenses.

*ment Security,* 396 Mass. 226, 231 (1985). LP-Milford failed to produce such documents. The board's reasons for disbelieving Aronovitz's testimony are adequate. See *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 470-471 (1981), quoting from Jaffe, Judicial Control of Administrative Action 607 (1965) ("[E]vidence of a party having the burden of proof may not be disbelieved without an explicit and objectively adequate reason").

LP-Milford also argues that the board's finding that LP-Westboro had no employees was not supported by substantial evidence because the record includes testimony from Aronovitz that the transfer of the payroll to LP-Westboro included the transfer of supervisors, who hired and controlled LP-Westboro employees. This argument misses the mark. The question before the board was whether there existed an employment relationship as defined in G. L. c. 151A, § 1(*k*), and, if so, whether that employment relationship existed with LP-Milford or LP-Westboro. The board did not believe Aronovitz's testimony that the employees at issue (including supervisors who hired employees) were employed by LP-Westboro, and not LP-Milford. "We defer to the board on issues of credibility and the weight of evidence." *Curtis* v. *Commissioner of the Div. of Unemployment Assistance,* 68 Mass. App. Ct. 516, 520 (2007). Moreover, as discussed, *supra,* the companies' financial documents support a finding that all the employees at issue in this matter were employees of LP-Milford. Although Aronovitz, who was president of LP-Westboro, presumably hired employees, he was also the president of LP-Milford, and there is insufficient evidence in the record to support a finding that employees who may have been hired by Aronovitz were hired to work for LP-Westboro and not LP-Milford.

In concluding that Aronovitz intentionally shifted the payroll between LP-Milford and LP-Westboro to avoid paying unemployment insurance contributions at a higher rate, the board found that Aronovitz knew, or could have easily calculated, in advance, the annual contribution rate for each corporation.[3] At both agency hearings, Aronovitz explained that he annually switched the

---

[3]The board noted that, toward the end of each year, the division calculates contribution rates for individual employers and notifies them in February of their annual rate and the data used to calculate that rate.

434 74 Mass. App. Ct. 428 (2009)

Lincoln Pharmacy of Milford, Inc. *v.* Commissioner of the Division of Unemployment Assistance.

payrolls between LP-Milford and LP-Westboro to satisfy "[S]tate wage and hour division" requirements and for other internal business purposes.

At the first agency hearing, Aronovitz stated that he shifted employees between LP-Milford and LP-Westboro to avoid paying overtime under State wage and hour rules that required an employer to pay overtime on a Sunday if that employer had seven or more employees in any one location during the preceding week. Aronovitz did not explain how shifting employees on an annual basis was necessary to avoid paying wages that were determined on a weekly basis. The board found that Aronovitz's explanations were not credible. We will not disturb the board's decision to discredit Aronovitz's explanation. See *Ingalls* v. *Board of Registration in Med.*, 445 Mass. 291, 301 (2005), quoting from *Herridge* v. *Board of Registration in Med.*, 420 Mass. 154, 161 (1995) ("the task of assessing the credibility of witnesses is one uniquely within an agency's discretion").

We conclude that there is substantial evidence in the record to support the board's findings that (1) LP-Milford was the sole employer for all employees reported as employed by either LP-Milford or LP-Westboro from 1994 through the first quarter of 2004, and (2) Aronovitz intentionally shifted the payroll to the account of the corporation with the lower contribution rate in order to avoid paying contributions at a higher contribution rate.

4. *Legitimate tax avoidance.* LP-Milford argues that even if LP-Milford and LP-Westboro annually switched employees between the two companies to minimize unemployment contributions, the companies' conduct constituted permissible tax avoidance. We disagree. LP-Milford reported its own payroll under LP-Westboro's account and paid unemployment contributions based on these false reports. The board found that LP-Milford had violated the Unemployment Insurance Law, which requires employing units to "keep true and accurate records of all individuals employed," G. L. c. 151A, § 45,[4] and to pay contributions

---

[4]General Laws c. 151A, § 45, as amended through St. 1990, c. 177, § 296, provides in pertinent part:

"Every employing unit shall keep true and accurate records of all individuals employed by him and such other information as the com-

based on wages of those employees, see 430 Code Mass. Regs. § 5.03(3) (1994). Because the division is the agency charged with enforcing the Unemployment Insurance Law, its interpretation of G. L. c. 151A is afforded substantial deference. See *LeBeau* v. *Commissioner of the Dept. of Employment & Training*, 422 Mass. 533, 537 (1996). "The party appealing that interpretation has the burden of proving it invalid." *Ibid.* LP-Milford has failed to show error. The division properly exercised its authority under G. L. c. 151A, § 15(*e*), to assess against LP-Milford contributions that were due as a result of its unlawful conduct.

5. *Effect of 2005 amendment.* LP-Milford, which was sanctioned for underpaying its unemployment contributions from 1998 through 2004, argues that the division impermissibly sanctioned it for "payrolling," which was not unlawful until St. 2005, c. 138, an amendment to the Unemployment Insurance Law, went into effect in 2006. See *Paraboschi* v. *Shaw*, 258 Mass. 531, 533 (1927) (general rule is that statutes are prospective in their operation). It argues that the enactment of the changes embodied in St. 2005, c. 138, known as the State Unemployment Tax Avoidance Act (SUTA), indicate the Legislature's belief that the prior statutory framework did not prohibit the practice of payrolling. We disagree.

SUTA amended c. 151A to add § 14N, which defines payrolling as "the practice where 1 employer reports its payroll under another employer's account." G. L. c. 151A, § 14N(*k*)(7).[5]

---

missioner deems necessary for the effective administration of this chapter. Such records shall be open to inspection by the commissioner or his authorized representatives at any reasonable time. The commissioner may require from any such employing unit such reports on wages, hours, employment, unemployment and related matters concerning his employees as the commissioner deems necessary for the effective administration of this chapter, and every such employing unit shall fully, correctly and promptly furnish to the commissioner all information required by him to carry out the purposes and provisions of this chapter."

[5]General Laws c. 151A, § 14N(*a*), provides, in relevant part: "If an employer transfers its trade or business, or a portion thereof, to another employer or employing unit and, at the time of the transfer, there is substantially common ownership, management or control of the transferor and transferee, then the account of the transferor shall be transferred to the transferee. The contribution rates of the transferor and transferee shall be recalculated . . . and made effective immediately upon the date of transfer of trade or business."

436                              74 Mass. App. Ct. 428 (2009)

Lincoln Pharmacy of Milford, Inc. *v.* Commissioner of the Division of Unemployment Assistance.

Section 6 of SUTA provided that it would "take effect with respect to calendar years beginning on or after January 1, 2006." Although LP-Milford's conduct constitutes payrolling under § 14N, because payrolling involves the reporting of false information to the division, it was prohibited prior to the enactment of § 14N under the law that required employing units to "keep true and accurate records of all individuals employed," G. L. c. 151A, § 45, and to pay contributions based on wages of those employees, see 430 Code Mass. Regs. § 5.03(3).

We are not persuaded by LP-Milford's argument that the enactment of the changes embodied in SUTA indicate the Legislature's belief that the prior statutory framework did not prohibit the practice of payrolling. It is not unusual for the Legislature to amend a statute "simply to clarify its meaning." *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 103 (1983). In this case, SUTA provides the commissioner with instructions for the assessment of employer contributions under various circumstances involving tax avoidance schemes, including payrolling, and gives the commissioner the authority to impose certain civil penalties upon employers found to have knowingly engaged, or advised a person to engage, in payrolling. We think that, in enacting § 14N, the Legislature intended to provide the commissioner with more detailed instructions for the enforcement of the law proscribing payrolling and to increase the deterrent effect of the law.

6. *Witness coaching.* LP-Milford argues, for the first time on appeal, that during a hearing held by the board, its chairman engaged in impermissible witness coaching. A party is not entitled to raise arguments on appeal that could have been raised, but were not raised, before the court below. *Green* v. *Brookline*, 53 Mass. App. Ct. 120, 128 (2001). Nor is a party entitled to review of an issue not presented before an administrative agency. *Ibid.* LP-Milford's argument is waived. Were we to consider the argument, however, we would find it unpersuasive.

During the hearing, the following exchange — involving LP-Milford's counsel, the chairman of the board, and the division's witness — occurred:

LP-Milford's Attorney: "And — I'm going to come back

|  | — does — the work that is performed [by an employee] have to be performed at the location of the employer?" |
|---|---|
| BOARD CHAIRMAN: | "If you know." |
| WITNESS: | "Yes, it has to be wor — it has to be done at the location of the business. Whatever services are rendered has to be done at the location." |
| BOARD CHAIRMAN: | "I — I would caution the witness. If you don't know the answer to a question that counsel asks you, I — It's not helpful for the board for you to venture a guess or feel compelled that you have to give some answer. OK?" |

The chairman was not in error. LP-Milford's attorney presented a question to a lay witness that involved a legal conclusion; the attorney asked the lay witness to testify regarding the facts that support a finding of an employer-employee relationship under G. L. c. 151A. The chairman properly instructed the witness to limit her testimony to only those matters within her knowledge. See 801 Code Mass. Regs. §§ 1.01(10)(d)(2), 1.02(10)(f) (1998). Moreover, assuming error, LP-Milford has failed to show how any such error resulted in prejudice. See *Fisch* v. *Board of Registration in Med.*, 437 Mass. 128, 133 (2002).

7. *Notice.* Finally, we address LP-Milford's argument that the division's notice of hearing, dated March 3, 2005, was defective because the notice did not accurately state the sections of c. 151A that the division sought to apply. An agency conducting an adjudicatory proceeding must give all parties "sufficient notice of the issues involved to afford them reasonable opportunity to prepare and present evidence and argument." G. L. c. 30A, § 11(1), inserted by St. 1954, c. 681, § 1. The division's notice of hearing listed G. L. c. 151A, §§ 14, 14A, and 15(*e*). Section 14 concerns rates and contributions in general, and is

relied upon by the division for its authority to determine the correct rates and contributions owed by LP-Milford. Section 14A is clearly inapplicable as it applies to nonprofit organizations. Section 15(*e*), which was denoted with a capital "E" ("15[E]") only because the notice was in all capital letters, is the applicable section upon which the division relied for its authority to assess additional contributions from LP-Milford.

Although the notice did not state the grounds upon which the division had sought to exercise its authority under § 15(*e*), LP-Milford received a letter from the division, dated June 22, 2004, stating (1) the applicable law, i.e., that "[e]ach entity must file and pay unemployment insurance contributions on behalf of its own employees, which should accurately reflect the employer account for whom employment services are performed;" (2) that a review of the filings of LP-Milford and LP-Westboro to the division indicated "a switching of the majority of employees to the account with the lowest contribution rate;" and (3) the division's conclusion that there existed a "pattern of misreporting wages under [LP-Westboro's account]." LP-Milford was aware of the issues that would be discussed at the hearing. In addition, LP-Milford has failed to show any prejudice flowing from the alleged notice defects. See *Fisch* v. *Board of Registration in Med.*, *supra.*

*Judgment affirmed.*