NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-35                                          Appeals Court


        KYLE K.  vs.  DEPARTMENT OF CHILDREN AND FAMILIES.


                         No. 22-P-35.

        Suffolk.     November 2, 2022. – October 6, 2023.

            Present:  Rubin, Englander, & Hand, JJ.


Department of Children & Families, Registry of alleged
     perpetrators.  Child Abuse.  Administrative Law,
     Administrative Procedure Act, Decision, Hearing, Judicial
     review, Standard of proof, Substantial evidence, Failure to
     raise issue before agency.  Due Process of Law,
     Administrative hearing.  Evidence, Administrative
     proceeding.  Practice, Civil, Review of administrative
     action, Judgment on the pleadings, Waiver.  Waiver.



     Civil action commenced in the Superior Court Department on
March 23, 2020.

     The case was heard by Maureen Mulligan, J., on motions for
judgment on the pleadings.


     Brian Waller for the plaintiff.
     Carol A. Frisoli for the defendant.


     RUBIN, J.  Today we review the decision of a hearing

officer of the Department of Children and Families (department

or DCF) upholding the determination that allegations of sexual

abuse of a child, Adam,[1] made by Adam against his stepfather, and reported to DCF by mandated reporters pursuant to G. L. c. 119, § 51A (51A report), were "supported." See 110 Code Mass. Regs. § 4.32 (2009).

The legal term "supported" is confusing. As relevant here, a mandated reporter must notify DCF when the reporter has "reasonable cause to believe that a child is suffering physical or emotional injury resulting from: (i) abuse inflicted upon him which causes harm or substantial risk of harm to the child's health or welfare, including sexual abuse." G. L. c. 119, § 51A. DCF must undertake an investigation. See G. L. c. 119, § 51B. Under DCF regulations, as relevant to this case, the finding that the allegation was "supported" actually means that the department concluded there was "reasonable cause to believe" that the reported "incident . . . of abuse or neglect of Adam "by a caretaker did occur." 110 Code Mass. Regs. § 4.32(2) (2009).

Among other things, a finding that an allegation made in a 51A report is supported triggers the obligation of DCF to "offer 'appropriate services' to the family of any child whom it has reasonable cause to believe is suffering from abuse or neglect 'to prevent further injury to the child, to safeguard his

---

[1] A pseudonym.

welfare, and to preserve and stabilize family life whenever possible.'  G. L. c.  119, § 51B (g)."  Adoption of Luc, 484 Mass. 139, 141 (2020).

The stepfather appealed from the finding that the allegations against him were "supported."  After a fair hearing, see 110 Code Mass. Regs. §§ 10.00 (2014), a hearing officer within DCF concluded that there was reasonable cause to believe that the allegations were true.  The stepfather sought judicial review in the Superior Court, and a judge of that court affirmed the hearing officer's decision, denying the stepfather's motion for judgment on the pleadings, and granting DCF's cross motion. The stepfather has now appealed.

Facts and prior proceedings.  After a long history of allegations of sexual abuse of Adam which were recanted or found not to be substantiated, in January, 2019, a mandated reporter submitted a 51A report, stating that Adam had alleged that his stepfather sexually abused him.  In February, 2019, a mandated reporter filed a 51A report stating that Adam had alleged sexual and physical abuse by the stepfather.

After an investigation mandated by G. L. c. 119, § 51B (51B report), the department's investigator found on March 20, 2019, that these allegations of sexual and physical abuse of Adam by the stepfather were "supported."

Adam's mother appealed through the department's fair hearing process. See 110 Code Mass. Regs. § 10.06(11) ("Whenever the Department has supported a report of abuse or neglect of a child, any parent of the subject child, any caretaker who has been identified in the Department's Central Registry as the person believed to be responsible for the abuse or neglect, any caretaker of the subject child and any Adolescent, who is the subject child, has the right to appeal the Department's decision to support the report"). The fair hearing was held before a DCF hearing officer, another executive branch official within DCF. At the hearing, the stepfather was added as an appellant when the mother's attorney said he also represented the stepfather.

At a fair hearing,

"the investigator's decision to 'support' an allegation of abuse or neglect is to be reversed by the hearing officer if, 'based on information available during the investigation and/or new information not available during the investigation, the [d]epartment's decision was not in conformity with the [d]epartment's policies and/or regulations and resulted in substantial prejudice to the aggrieved party.' 110 Code Mass. Regs. § 10.06(8)(c) (1998). Thus, the issue on such an administrative appeal from the investigator's decision is whether, based on all information then available (which may take into consideration information not considered by the investigator during the original investigation), there was -- and still is —- 'reasonable cause to believe' that the child was abused or neglected."

Lindsay v. Department of Social Servs., 439 Mass. 789, 799 (2003). See 110 Code Mass. Regs. § 10.06(11)(a).

After the hearing, the hearing officer concluded that DCF's decision to find the 51A reports of sexual abuse supported "was made in conformity with the Department's regulations and policies," and that "there was a reasonable basis" to believe the alleged sexual abuse occurred. See Covell v. Department of Social Servs., 439 Mass. 766, 778-779 (2003). The hearing officer concluded that there was not reasonable cause to believe the physical abuse occurred and reversed the DCF conclusion that the allegation of physical abuse was supported.

At the hearing, the stepfather, Adam's mother, and the DCF investigator assigned to the case testified. DCF introduced evidence of the two 2019 reports by Adam of sexual abuse by the stepfather, as well as evidence that Adam had recanted those reports. Adam did not appear at the hearing; his allegations of sexual assault came in through hearsay, the testimony of the DCF investigator, and various documents, including police reports. Both DCF and the stepfather offered additional documentary evidence, including 51A and 51B reports.

The statements that led to the 51A reports were first made by Adam in January, 2019, when he was thirteen years old. Adam recanted the allegations after he was hospitalized for psychiatric reasons in March, 2019.

The hearing officer examined all the evidence, including those things in the record that detracted from the weight of the

evidence that Adam's allegations were true, including Adam's retraction, and the fact that earlier allegations had not been found substantiated when investigated by authorities in New Hampshire and Rhode Island. Those prior allegations and investigations were recounted in the findings of the hearing officer. Adam first accused the stepfather of sexual assault in 2010, claiming that the stepfather had coerced Adam to put the stepfather's penis in his mouth. New Hampshire and Rhode Island authorities investigated the 2010 allegations and determined them to be unfounded -- in part because Adam "stated he lied about the sexual abuse."[2] In the summer of 2018, DCF investigated an additional allegation that the stepfather had sexually assaulted Adam. DCF concluded then that "[t]he concerns raised around sexual abuse by [the stepfather] had no basis or validation."[3]

The hearing officer found that on six separate occasions over a substantial period of time, first in 2010, then in 2019,

---

[2] According to department records, Adam's report in 2010 was that "[he] put his mouth around [the stepfather's] penis." Adam later "recanted his statement and passed a polygraph test denying the allegations."

[3] Additionally, Adam reported that after a Christmas party in 2010 at a relative's house in Rhode Island, his grandmother's boyfriend had touched his buttocks and testicles under his clothing. DCF was unable to identify the grandmother's boyfriend by name but supported the allegation that an "unknown person" had sexually abused Adam in 2010.

Adam reported that his stepfather sexually abused him, including by raping him twice, orally. In 2019, when Adam was thirteen years old, he provided corroborating details about the allegations, which were also introduced through hearsay evidence. At a sexual abuse intervention network (SAIN) interview, he described a rape in some detail, including specifics about the location and time of day at which the rape occurred, the fact that the stepfather removed his own clothes, but Adam remained clothed, the dialogue between himself and the stepfather leading up to Adam's taking the stepfather's penis in his mouth, and his description of "just sucking on [the stepfather's penis] like a child would do to a lollipop." Even apart from the description of the sexual abuse itself, the hearing officer recounted that Adam said that "the stepfather did not touch him and the stepfather's pants were down to his ankles and his shirt was off. [Adam] said he had his clothes on. About twenty minutes later, around noon, his mother returned home so his stepfather pulled up his pants and asked 'who is it' as his mother was at the door knocking. Mother rang the doorbell and the neighbor had let her in, and then she knocked on the apartment door and [the] stepfather opened the door for her. [Adam] stated he had met his stepfather only one month before this happened. [Adam] said this happened on the

second floor of mother's house, which was green with two porches and on [a specified] street."

As to the recantation by Adam, the hearing officer found that "the Appellants, notably mother, directly influenced [Adam] to recant the allegations, which occurred while the child was inpatient at a hospital for psychiatric reasons in March 2019. [Adam] has recanted the allegations of sexual abuse twice after having direct contact with his mother.  Therefore, the Appellants' arguments were not persuasive."

There was also at least some corroborating evidence:  Adam suffered from a lack of bowel and urinary control, the latter of which the Supreme Judicial Court has accepted as a "common behavioral symptom[] of abuse." Commonwealth v. Alvarez, 480 Mass. 299, 302 (2018).  Adam's therapist reported that Adam's "behaviors of bed wetting and defecating in his clothing . . . [were] signs of some sort [of] sexual trauma."

The hearing officer found "that the Department, in making the decision of sexual abuse of [Adam] by [the] stepfather, and pursuant to 110 [Code Mass. Regs. §§] 2.00 & 4.32, had sufficient evidence to have reasonable cause to believe that [the] stepfather sexually abused [Adam].  The Hearing Officer finds that engaging in oral sex constituted sexual contact. [Adam] had inconsistencies regarding the age of when sexual abuse occurred.  However, [Adam] has been consistent in his

disclosures of sexual contact between him and his stepfather, his therapist questioned sexual abuse due to [Adam]'s behaviors of wetting the bed and having bowel movements in his pants, his guidance counselor reporting that he was a reliable reporter." The hearing officer further spelled out, "Given all the evidence regarding the matters under review, the Hearing Officer is left with credible evidence that this child has continually disclosed these allegations over a significant period of time. Contacts with the child's family therapist during the 51B response and with the child's mental health clinician by the detective during his criminal investigation indicate that the child experiences lack of control over his bowel movements and experiences problematic urinary functions. The therapist has always questioned sexual abuse because [Adam] has been wetting the bed and having bowel movements in his pants. In addition, the child's school guidance counselor, who was questioned about the child's veracity during the 51B response, reported that he believes [Adam] to be a reliable reporter of information; he is very upfront about things he says and claims ownership. It was also notable that [Adam] was able to remember details of who was in the home and was not and under which circumstances he was sexually abused such as the house they lived in and the school he attended at the time the abuse took place."

The stepfather then appealed to the Superior Court, pursuant to G. L. c. 30A, § 14, "alleg[ing] that the Department's decision was arbitrary, capricious, [without] proper standing, not supported by substantial evidence and was an abuse of discretion."[4]  The stepfather moved for judgment on the pleadings, and DCF filed a cross motion for judgment on the pleadings.  The Superior Court judge denied the stepfather's motion and granted DCF's motion.

Discussion.  1.  Substantial evidence.  The stepfather has now appealed to this court.  The primary question before us is whether at the time of the decision of the hearing officer, there was substantial evidence that there was reasonable cause to believe the allegations that the stepfather abused Adam.  See Lindsay, 439 Mass. at 798 (when appellate court looks "to see whether there was 'substantial evidence' to support the hearing officer's decision, G. L. c. 30A, § 14 [7] [e], there need only be 'substantial evidence' supporting the conclusion that there was 'reasonable cause to believe' that" caretaker abused or neglected child).  We thus are not being asked whether the stepfather actually abused Adam, something on which we express no opinion.  Rather, we must determine only whether there was substantial evidence before the hearing officer supporting the

_____

[4] Adam's mother did not join in the appeal to the Superior Court and is not involved in this appeal.

determination that there was "reasonable cause to believe" the stepfather sexually abused Adam.

a. The test described. The substantial evidence test is almost as low a bar as there is in terms of standards of review. "In order to be supported by substantial evidence, an agency conclusion need not be based upon . . . even a preponderance of the evidence . . . ." Lisbon v. Contributory Retirement Appeal Bd., 41 Mass. App. Ct. 246, 257 (1996). The substantial evidence test "takes into account the entire record, both the evidence supporting the agency's conclusion and whatever in the record fairly detracts from the weight of that evidence." Covell, 439 Mass. at 783, citing New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 466 (1981). "Under the substantial evidence test, a reviewing court is not empowered to make a de novo determination of the facts, to make different credibility choices, or to draw different inferences from the facts found by the [agency]." Pyramid Co. of Hadley v. Architectural Barriers Bd., 403 Mass. 126, 130 (1988).

As to facts, where there is substantial evidence to support the findings of the agency, the court will not substitute its own view of the facts. The Supreme Judicial Court (SJC) has explained that

> "[t]he substantial evidence 'standard of review is highly
> deferential to the agency on questions of fact and
> reasonable inferences drawn therefrom.'" Flint v.

Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992).
We uphold an agency's finding of fact as long as it is
supported 'upon consideration of the entire record' and a
'reasoning mind [could have made the finding] by reference
to the logic of experience' (quotations omitted). New
Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456,
466 (1981). See Tennessee Gas Pipeline Co. v. Assessors of
Agawam, 428 Mass. 261, 265-266 (1998) ('reasonable basis in
logic' sufficient to uphold agency finding). Factual
findings are set aside 'if the evidence points to no felt
or appreciable probability of the conclusion or points to
an overwhelming probability of the contrary.' (quotation
omitted). New Boston Garden Corp., supra."

Citrix Sys., Inc. v. Commissioner of Revenue, 484 Mass. 87, 95-
96 (2020).

Finally, as to credibility, under the substantial evidence
test, "[i]n assessing the agency's decision, we show particular
deference to credibility determinations and inferences drawn
from the facts." Collamore v. Office of Campaign & Political
Fin., 67 Mass. App. Ct. 315, 322 (2006).

The low standards chosen by the Legislature with respect to
a DCF finding that a § 51A allegation is supported -- reasonable
cause to believe, with review for substantial evidence -- make
sense because the determination that an allegation of child
abuse and neglect received under § 51A is "supported" is what
allows DCF to begin to take steps to protect the child. See
Cobble v. Commissioner of the Dep't of Social Servs., 430 Mass.
385, 390-394 (1999) (department may find report of suspected
abuse or neglect under § 51A supported only where there is
substantial evidence that there is reasonable cause to believe

child was victim of abuse or neglect). This is a context to which the reasonable cause to believe and substantial-evidence tests are well suited. All too often, truthful allegations of child abuse are recanted. See Adoption of Xarissa, 99 Mass. App. Ct. 610, 616 (2021). Reports are often contradictory or inconsistent. And as we have said, the actual issue here is not whether the allegations in this case are sufficient to find, even by a preponderance of the evidence, that the stepfather abused Adam. The question is whether there is substantial evidence sufficient to support the conclusion that there was reasonable cause to believe the stepfather abused Adam, that is that the 51A reports were supported, the standard that is used routinely in all types of child abuse and neglect cases to allow DCF to open a case for services and to assign a social worker to the family.

Doubtless in some cases where there is substantial evidence that there is "reasonable cause to believe" there has been child abuse or neglect, it will ultimately be found that the alleged perpetrator did not commit the asserted abuse or neglect, or that it could not be proved sufficiently to meet the preponderance of the evidence, the clear and convincing evidence, or the beyond a reasonable doubt standard.

But the low standard for a finding that a § 51A allegation is supported, and our deferential standard of review, reflect

the fact that such findings are made after only an initial investigation and, among other things, are designed to determine when services must immediately be provided to a family.  As the SJC has explained,

> "'[R]easonable cause' . . . is used in §§ 51A and 51B . . . as a threshold determination. . . .  A threshold determination . . . necessarily anticipates that further proceedings regarding the particular situation will be held. . . .  [I]t is inevitable that a threshold determination is more likely to be erroneous than an intermediate or final determination which utilizes a more rigorous review process."

Care & Protection of Robert, 408 Mass. 52, 64-65 (1990).  The low standard, however, is warranted by the need to provide services or take other action immediately to protect the child.

b.  The test applied.  There is certainly substantial evidence in this case sufficient to support DCF's conclusion that there was reasonable cause to believe the stepfather in fact sexually abused Adam.

i.  The stepfather argues that the hearsay evidence of Adam's allegations lacked indicia of reliability.  "Hearings on appeals are not subject to any formal rules of evidence, and written materials from the department's files and records are admissible."  Covell, 439 Mass. at 778.  Evidence of abuse can be "substantial" even when the alleged victim's "statements were presented only through hearsay sources. . . ."  Id. at 785-786. Indeed, although there was also nonhearsay evidence here, a

finding of "[s]ubstantial evidence may be based on hearsay alone if that hearsay has 'indicia of reliability.'" Id. at 786.[5]

Even if it were not supplemented by nonhearsay evidence, the hearsay in this case has adequate indicia of reliability to provide substantial evidence supporting the finding that there was reasonable cause to believe the stepfather abused Adam. It is undisputed that on six separate occasions over a substantial period of time, first in 2010, then in 2019, Adam reported that his stepfather sexually abused him. After disclosing alleged abuse in 2019 at age thirteen, Adam was also able to provide corroborating details about an incident. As described above, at a SAIN interview, he described a rape in some detail, including specifics about the location and time of day at which the rape occurred, the fact that the stepfather removed his own clothes, but Adam remained clothed, the dialogue between himself and the stepfather leading up to Adam's taking the stepfather's penis in

---

[5] Given all the circumstances, including Adam's age at the time of the reports, the level of detail of the hearsay, the corroborative details, and the hearing officer's findings about reliability and the basis of the recantation, we conclude as the SJC did in Covell, 439 Mass. at 783-785, that Edward E. v. Department of Social Servs., 42 Mass. App. Ct. 478, 486 (1997) (multilevel hearsay report of three year old child that lacked detail, though admissible, was not standing alone sufficiently reliable to amount to substantial evidence), is not applicable here. See Covell, supra at 783-784 (Edward E. inapplicable because accuser "was thirteen years old at the time, not a small child," and because, unlike in Edward E., the allegation did not "place" the "abuse in [an] implausible setting and circumstances").

his mouth, and his description of "just sucking on [the stepfather's penis] like a child would do to a lollipop." The hearing officer drew a reasonable inference that Adam's guidance counselor's statement that Adam is a reliable reporter supports a conclusion that Adam's reports of sexual abuse were reliable, an inference to which we owe deference, even though the guidance counselor's statement was made outside the context of sexual abuse. There was also at least some corroborating evidence in Adam's lack of bowel and urinary control, as described above. To be sure, to the extent that this is evidence of sexual abuse, it could be evidence of sexual abuse by someone else -- there was a supported allegation of sexual abuse in 2010 by an unknown perpetrator, see note 3, supra -- but this does not drain the evidence of all corroborative value.

As the stepfather asserts, Adam recanted the allegations, but, as quoted above, the hearing officer found that "the Appellants, notably mother, directly influenced [Adam] to recant the allegations, which occurred while the child was inpatient at a hospital for psychiatric reasons in March 2019. [Adam] has recanted the allegations of sexual abuse twice after having direct contact with his mother. Therefore, the Appellants' arguments were not persuasive." The stepfather argues that this finding of fact is clearly erroneous, stating, "Mother had a phone call with child on the day he recanted, however, there is

no evidence in the record to suggest that mother influenced or coerced child to recant." It was, however, a reasonable inference for the hearing officer to draw and this finding of fact is not clearly erroneous.

The stepfather argues that the reports by Adam also were inconsistent and, for that reason as well, lack indicia of reliability. Prior to recantation, in 2019, Adam, then thirteen years old, sometimes said he had been six years old and sometimes said he had been eight years old when the abuse occurred. But this is not a very serious inconsistency. See Commonwealth v. Melchionno, 29 Mass. App. Ct. 939, 939 (1990) ("As typically occurs in child abuse cases, the testimony of the child witnesses was often inconsistent and contradictory"). There were other inconsistencies -- like whether the stepfather was intoxicated, whether other individuals were involved, and whether the stepfather attempted to rape Adam another time -- but given the hearing officer's finding that the recantations were not credible, these inconsistencies did not render the hearsay so unreliable that it could not be relied upon. At least where, as here, Adam's hearsay evidence was found credible on the basis of its detail, the presence of corroborating evidence and the hearing officer's assessment of the live testimony of the stepfather and Adam's mother, "[u]nder the substantial evidence test, a reviewing court is not empowered

. . . to make different credibility choices . . . ." Retirement Bd. of Brookline v. Contributory Retirement Appeal Bd., 33 Mass. App. Ct. 478, 480 (1992), quoting Pyramid Co., 403 Mass. at 130. Cf. Brockton v. Energy Facilities Siting Board (No. 1), 469 Mass. 196, 213 (2014) (board "has broad discretion to weigh and assess the credibility of evidence, including hearsay evidence").

ii.  The stepfather next argues that DCF failed to comply with its procedural policies, which substantially prejudiced him.  The stepfather raises several arguments, which he failed to raise in the fair hearing or the Superior Court, regarding DCF's handling of the February 51A report, including that DCF failed to interview Adam and the stepfather a second time about the February report.  Because the stepfather failed to raise these arguments before the administrative agency, we treat these claims as waived.  See Lincoln Pharmacy of Milford, Inc. v. Commissioner of the Div. of Unemployment Assistance, 74 Mass. App. Ct. 428, 436 (2009).[6]

---

[6] The stepfather also argues that it was arbitrary and capricious for the hearing officer to "overturn[] the physical abuse decision," but affirm the sexual abuse decision.  The stepfather suggests that the hearing officer's decision was "incongruous[]" because both the physical abuse allegations and the sexual abuse allegations "lack[ed] witnesses and corroborating evidence."  This claim fails because the hearing examiner provided a reasonable explanation, see Carver v. Commissioner of Correction, 491 Mass. 608, 619 (2023), for the treatment of the two issues, relying on Adam's bowel issues as

iii.  Finally, the stepfather argues that his name should not have been placed on the registry of alleged perpetrators (registry) of the DCF central registry.  See 110 Code Mass. Regs. § 4.37 (2009).  A name of an alleged perpetrator can be placed on the registry when an allegation against him is supported, the allegation is referred to the district attorney, 110 Code Mass. Regs. § 4.37, "and the identification of the perpetrator is sufficiently clear that it meets the 'substantial evidence' test as to the identification itself," Covell, 439 Mass. at 780.

There appears to be no record evidence that the stepfather's name has been placed on the registry.  Assuming his name was in fact placed there, this is not an appeal from that placement, and neither the fact of such placement nor its propriety was raised below at the fair hearing, in the complaint for judicial review, or in the memorandum in support of his motion for judgment on the pleadings.  Cf. Covell, 439 Mass. at 767 (reviewing for substantial evidence determination that allegation was supported made in context of administrative appeal challenging placement on registry).  We therefore decline

corroborating evidence of the sexual abuse allegations and recognizing that it was "notable that [Adam] was able to remember details of who was in the home and was not and under which circumstances he was sexually abused such as the house they lived in and the school he attended at the time the abuse took place."

to address it.  We do note that under a DCF regulation an
alleged perpetrator's name placed in the registry will remain on
that list for seventy-five years.  See 110 Code Mass. Regs.
§ 4.37.  And, although "confidential," G. L. c. 119, § 51F,
access to the registry information is not utterly restricted; it
can be made available to anyone at the discretion of the
Commissioner of DCF.  See 110 Code Mass. Regs. § 4.38(4) (2009).
Because of the liberty interests involved, placement on the
registry may, therefore, be a matter of more than ordinary
concern.  Nonetheless, even were the stepfather's placement on
the registry properly before us, he has raised no objection to
the regulation providing for such placement, or to the low
burden of proof and standard of review previously applied in
cases involving such placement.  We therefore express no opinion
on those questions.

Conclusion.  We conclude that the hearing officer's
determination that DCF had reasonable cause to believe that the
stepfather sexually abused Adam was supported by substantial
evidence.[7]  The judgment is affirmed.

---

[7] The stepfather argues that a motion he filed in Superior
Court for leave to present additional evidence was improperly
denied.  See G. L. c. 30A, § 14 (6) (statute) ("If application
is made to the court for leave to present additional evidence,
and it is shown to the satisfaction of the court that the
additional evidence is material to the issues in the case, and
that there was good reason for failure to present it in the
proceeding before the agency, the court may order that the

So ordered.

---

additional evidence be taken before the agency upon such conditions as the court deems proper. The agency may modify its findings and decision by reason of such additional evidence and shall file with the reviewing court, to become part of the record, the additional evidence, together with any modified or new findings or decision"). As described by DCF in its brief, the stepfather sought to introduce the administrative record associated with a fair hearing decision stemming from two 51A reports that were filed "a year after the [reports filed in] the present case and involved a separate sibling with separate and distinct allegations and factual circumstances." DCF reviewed the evidence that the stepfather wished to introduce and opposed the motion, arguing that such evidence was not material to the issues in the case, as required by the statute. The Superior Court judge denied the motion "for the reasons stated in the Opposition." On appeal, the stepfather suggests that because DCF reviewed the evidence, DCF "assented to the first prong of the statute . . . bypass[ing] the court's discretion," and thus the additional evidence should have "become part of the record on review." But in responding to a motion to present additional evidence, an agency would need to review the proffered evidence to determine whether it should oppose the motion, on the basis, for example, that it was immaterial. The stepfather's reading of the statute -- that through such review an agency "waive[s] its opportunity to oppose the additional evidence" -- would prevent an agency from mounting even a meritorious opposition to a motion for leave to present additional evidence. This outcome would defeat the statute. The stepfather goes on to argue that even if the additional evidence "ha[d] no bearing on the instant case," there would be "no reason to oppose the inclusion of the [additional evidence]." But, again, this misreads the statute, which requires that the stepfather show "that the additional evidence is material to the issues in the case." G. L. c. 30A, § 14 (6). We conclude that the denial of the stepfather's motion for leave to present additional evidence was not an abuse of discretion.

ENGLANDER, J. (concurring).  As the majority states, this is an appeal from a decision by the Department of Children and Families (DCF or department) to "support" a report of abuse of a child, under 110 Code Mass. Regs. § 10.06(11) (2014), not an appeal by "[a]n individual who is listed on the Department's Registry of Alleged Perpetrators" (registry), as set forth in 110 Code Mass. Regs. § 10.06(12) (2014).  The distinction is important in my view.  In the former appeal the question is whether there was sufficient evidence for the department to commence providing appropriate services to the child and the child's caretakers.  See 110 Code Mass. Regs. § 4.32 (2), (5) (2009).  See also Adoption of Luc, 484 Mass. 139, 141 (2020).  The bar for such a decision is, and should be, quite low.  The due process clause may be implicated, but the imposition on liberty interests from the commencement of government services will generally be modest (although not necessarily insubstantial), and thus there need be few if any limitations on the types of evidence that can be considered in such a proceeding.  I concur with the majority that, as an appeal under 110 Code Mass. Regs. § 10.06(11), the decision of the hearing officer can be affirmed.

I write separately, however, because although it is true that on the record before us we do not know that the stepfather's name has been listed on the registry, I believe we

can fairly assume that it has.[1]  And if the stepfather is listed on the registry, on this record he should not be.  As this court has recognized previously, listing on the registry is an outcome "of more than ordinary gravity in that it places a permanent mark on a person."  Edward E. v. Department of Social Servs., 42 Mass. App. Ct. 478, 487 (1997).  Such a listing materially infringes on that person's liberty interests, and due process accordingly requires that "certain protections" be afforded.  Commonwealth v. Durling, 407 Mass. 108, 112 (1990).  One such protection is that the Commonwealth not rest its listing decision on unreliable hearsay evidence.  See Edward E., supra at 484-487.  In my view the hearsay evidence relied upon by the hearing officer here was not sufficiently reliable to justify a

---

[1] In the ordinary case, the circumstances here would result in the stepfather's name being listed on the registry.  The hearing officer found the allegations of sexual abuse supported, with a specific finding of the stepfather as the alleged perpetrator.  It appears that DCF referred the allegations to the district attorney.  In those circumstances, 110 Code Mass. Regs. § 4.37 (2009) states that the alleged perpetrator "shall" be added to the registry, where his name presumptively would remain for seventy-five years.

Here, however, the registry was not mentioned in the decision of the hearing officer, in the stepfather's G. L. c. 30A complaint, or in the stepfather's cross motion for judgment on the pleadings.  As the issue of the propriety of the stepfather's registry listing (assuming he was listed) was not presented to the Superior Court, I cannot fault the majority for viewing this as an appeal challenging only the sufficiency of evidence to "support" the allegations.  See Covell v. Department of Social Servs., 439 Mass. 766, 778-781 (2003) (describing and addressing distinction between the two types of appeals).

material imposition on liberty such as listing in the registry. Cf. Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd., 428 Mass. 90, 100 (1998) ("Sex offenders have a constitutionally protected liberty and privacy interest in avoiding registration and public dissemination of registration information").

Because Adam did not testify at the hearing, the hearing officer based the conclusion of abuse on hearsay statements related by the DCF investigator and contained in the G. L. c. 119, § 51A and § 51B, reports and other documentary evidence. The question whether such hearsay is sufficiently reliable for due process purposes has been addressed by our courts in a variety of genres, including proceedings before the Sex Offender Registry Board and probation revocation hearings. See Durling, 407 Mass. at 118-122; Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89-90 (2019) (Doe No. 523391). These cases tell us to look for certain "indicia" of reliability, which include, among other things, whether the statements are consistent; whether they are otherwise corroborated; "the absence of any motive or reason for [the declarant] to make false allegations," Covell, 439 Mass. at 786-787; and "whether the statements were made under circumstances that support their veracity," Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016) (in context of probation

revocation).  "[O]ther inconsistent statements by [the] declarant may or may not detract from the reliability of the hearsay, depending on the circumstances of those statements." Doe No. 523391, supra at 90.

It is very difficult to square the record in this case with previous case law as to indicia of reliability.  Adam's statements, made on a number of occasions over many years, cannot, in my view, reasonably be described as "consistent." While it is true that Adam accused the stepfather of oral rape several times over the years, Adam was not consistent about if, when, or how many times the abuse took place.  In 2010, Adam claimed he was sexually abused by the stepfather, but then recanted.  Then, in January 2019 (at age thirteen), Adam claimed that the stepfather had raped him twice when he was eight years old, but changed this initial disclosure during the interview process, claiming that the abuse occurred once when he was about six.[2]  One month later, in February of 2019, Adam once again changed the narrative, this time claiming that the stepfather had abused him only two months before, in December of 2018, even though Adam had not mentioned any December 2018 abuse when he

---

[2] While it is true, as the majority emphasizes, that Adam supplied detail regarding this earlier assault during an interview in February of 2019, I note that Adam had supplied none of this detail in his original disclosure made only one month before, in January of 2019.  On this hearsay record, the belated provision of detail was itself an inconsistency.

spoke up in January of 2019.  And the following month, in March of 2019, Adam recanted his allegations altogether, stating that he "lied about being sexually abused by his stepfather," and that "he felt pressured to make this accusation in response to behavioral problems and wanting to avoid responsibility."

I am mindful that child and even adult victims of sexual abuse may, for a variety of reasons, lack perfect consistency in their reporting, or even recant and thus contradict their allegations.  Where the victim's allegations are thereafter presented through hearsay to an adjudicatory body, however, such material inconsistencies must be confronted for purposes of evaluating reliability.  On the particular facts here, the material inconsistencies and contradictions indicate that the hearsay evidence lacked the "character of substantiality." Edward E., 42 Mass. App. Ct. at 487 (statements "persistently encumbered by unreliability" do not qualify as substantial evidence).  Contrast Covell, 439 Mass. at 783 (noting victim's allegations were "specific, detailed, and consistent").

I have concerns as well about whether Adam's allegations were corroborated in any significant way (or at all), and about the hearing officer's treatment of certain of the hearsay evidence presented.  For example, the hearing officer's reliance on the reported hearsay statements from Adam's guidance counselor was, in my view, improper.  Those statements were

murky at best, and cannot reasonably be understood as an endorsement of Adam's reliability as a historian. But I need not belabor the point. As the majority points out, this appeal presents only the issue of the sufficiency of the evidence for the department to initiate providing services to an alleged victim of sexual abuse. The standard for whether the department may do so is indeed a very low bar -- a lower bar, in my view, than what is required to place an individual on the registry of alleged perpetrators, although the case law has not yet drawn such a distinction.[3] I have no quarrel with the conclusion that the very low standard was met here, despite my concerns over the reliability of the hearsay presented, because the liberty interest at stake is less substantial. See Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 309 (2015) ("deprivation of more extensive private interests requires greater procedural protections"). See also Durling, 407 Mass. at 113. For those reasons, I concur.

---

[3] As the majority states, the case law sets the standard as requiring substantial evidence that there was "reasonable cause to believe" that the alleged abuse had occurred. Lindsay v. Department of Social Servs., 439 Mass. 789, 793 (2003), quoting G. L. c. 119, § 51A. That standard has been applied to both types of appeals identified in 110 Code Mass. Regs. § 10.06(11) and (12). I note, however, that the application of the standard could differ, since the evidence that can be permissibly relied upon in the two types of appeals may differ -- that is, due process prevents the use of unreliable hearsay evidence in decisions to place an individual on the registry list.