NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-313

WILLIAM FAHEY

vs.

DIRECTOR OF THE DIVISION OF UNEMPLOYMENT ASSISTANCE & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, William Fahey, appeals from a judgment of the District Court affirming the Department of Unemployment Assistance (DUA)'s determination that Fahey is ineligible for unemployment insurance (UI) benefits.  We affirm.

Background.  We summarize the factual findings of the DUA review examiner (examiner), which were adopted by the DUA's board of review (board).  Where necessary, we supplement those findings with materials from the administrative record.  Fahey was employed by the town of Andover as full-time director of a youth program from January 18, 1994, until May 10, 2021.  During his tenure, the town gave Fahey a cellular telephone and a

_____

[1] Town of Andover.

laptop computer, both exclusively for use in his position at work.  The town also provided Fahey with a copy of the town's employee handbook.  The handbook contained policies on, among other things, internet use and public relations which read in relevant part:

> "Personal and other unauthorized use of the Town's E-mail and Internet is strictly prohibited . . . . [U]nder no circumstances may employees create, send or retrieve sexually or otherwise offensive, derogatory or harassing messages to employees or others by e-mail or the Internet. Violations of such standards may result in disciplinary action up to and including discharge."

In approximately 2011, Fahey met a sixteen year old female high school student, whom we shall call Sally.  She was a participant in the youth program under Fahey's supervision.  In 2016, Sally alleged that Fahey had "engaged in inappropriate conduct when she was a minor" in the youth program.  As a result of the allegations, the town placed Fahey on paid administrative leave beginning February 5, 2021.

In April 2021, the town hired a third party to conduct an investigation into the allegations that Fahey "engaged in . . . sexually inappropriate behavior with a woman years earlier." The investigator concluded that Sally's allegation that Fahey engaged in sexually inappropriate behavior toward her was "not credible."  However, the investigation revealed that Fahey "hugged program participants and told them that he loved them."

2

In addition, the investigator determined that Fahey stayed involved with Sally after she turned eighteen and had left the youth program. The investigator's inquiry also included a search of Fahey's town-issued cellular telephone, which revealed personal text messages between Fahey and Sally; in some messages, Fahey told her that she was beautiful and that he loved her. On one occasion, Fahey met Sally at his workplace from around 9:00 P.M. until midnight and then drove her home in his personal vehicle. The investigation also revealed that Fahey accessed and viewed a pornographic video of Sally. After Fahey watched the video, he brought the video to the attention of Sally's mother, and they watched the video together.

As a result of the investigation, the town terminated Fahey from his position as director of youth services on May 10, 2021. Subsequently, Fahey filed for UI benefits. After review, the DUA issued a notice of disqualification finding Fahey ineligible for benefits pursuant to G. L. c. 151A, § 25 (e) (2), beginning May 9, 2021, and indefinitely thereafter. Fahey appealed the notice of disqualification, and two evidentiary hearings were held.

Ultimately, the examiner affirmed the DUA's determination on the grounds that Fahey's interactions with Sally and her mother resulted in violations of the town's sexual harassment and internet use policies, and the professional boundaries of

his position.  The examiner determined that Fahey's behavior constituted "deliberate misconduct in wilful disregard of the [employer's] interest."  Fahey appealed the examiner's decision to the board.

The board issued a decision affirming the examiner's decision on the grounds that Fahey "engaged in deliberate misconduct in wilful disregard of the employer's interest," "violated the email and internet use policy . . . that requires employees to maintain a professional manner at all times," and "crossed professional boundaries."[2]  It also concluded that "[n]othing in the record suggests that there were mitigating circumstances that required [Mr. Fahey] to act" as he did.  As to Fahey's interaction with Sally's mother, the board concluded that the examiner "reasonably concluded that viewing the video . . . was unprofessional and contrary to how the employer expected its employees to interact with the public."

Fahey appealed the board's decision to the District Court pursuant to G. L. c. 151A, § 42.  The judge concluded that the board's decision was supported by substantial evidence and affirmed the board's determination that Fahey was ineligible for UI benefits.

---

[2] Of note, the board did not agree with the examiner's conclusion that Fahey's conduct violated the employer's sexual harassment policy.

4

Discussion. An administrative agency's decision may only be overturned if it is "unsupported by substantial evidence," or the decision is "arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." Commonwealth v. Commonwealth Employment Relations Bd., 101 Mass. App. Ct. 616, 622 (2022), citing G. L. c. 30A, § 14 (7). "Substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Lisbon v. Contributory Retirement Appeal Bd., 41 Mass. App. Ct. 246, 257 (1996). Our review of the board's determination that a claimant is disqualified from receiving benefits is "highly deferential to the agency" (citation omitted), Lincoln Pharmacy of Milford, Inc. v. Commissioner of the Div. of Unemployment Assistance, 74 Mass. App. Ct. 428, 431 (2009), and limited to deciding "whether the decision contains sufficient findings to demonstrate that the correct legal principles were applied, and whether those findings were supported by substantial evidence." Norfolk County Retirement Sys. v. Director of the Dep't of Labor & Workforce Dev., 66 Mass. App. Ct. 759, 764 (2006).

As relevant here, G. L. c. 151A, § 25 (e) (2) bars an employee from receiving UI benefits if they were terminated due "to deliberate misconduct in wilful disregard of the employing unit's interest." Fallon Community Health Plan, Inc. v. Acting Director of the Dep't of Unemployment Assistance, 493 Mass. 591,

5

592 (2024), quoting G. L. c. 151A, § 25 (e) (2). In determining an employee's state of mind, "the factfinder must take into account the worker's knowledge of the employer's expectation, the reasonableness of that expectation and the presence of any mitigating factors" (quotations and citations omitted). Fallon Community Health Plan, Inc., supra, at 593.

We conclude that the board appropriately reviewed the entire record and its conclusion was supported by substantial evidence. On appeal, Fahey asserts that the board ignored "significant mitigating factors" regarding his state of mind.[3] All of Fahey's arguments were considered and properly rejected. As set forth supra, there was substantial evidence that Fahey used his town-issued cellular telephone to send text messages to Sally which "crossed professional boundaries," viewed a pornographic video of Sally and then showed it to her mother, and met alone with Sally on the employer's premises late at night.

Additionally, the board's finding that Fahey's "conduct was deliberate," such that he was aware of his actions and probable consequences, was substantially supported by the evidence. The

---

[3] Fahey lists various "mitigating factors," including that he helped Sally at her family's request and because Sally was "mentally unhealthy." We defer to the agency's determination that these mitigating factors were nonexistent. See Lincoln Pharmacy of Milford, Inc., 74 Mass. App. Ct. at 431.

board concluded that there was "no suggestion that any of [his] actions . . . were accidental."[4] The board assessed whether there existed any mitigating circumstances sufficient to justify Fahey's misconduct by reviewing the employer's interest "to provide 'recreation, educational, and cultural programs for youngsters.'" The board was unable to find anything in the record to suggest "there were mitigating circumstances that required [Fahey] to" act the way he did. Thus, the board properly reviewed the evidence and concluded there were no circumstances which negated the willfulness of Fahey's disqualifying conduct. See Gupta v. Deputy Director of the Div. of Employment & Training, 62 Mass. App. Ct. 579, 586-587 (2004).

The judge did not err in upholding the board's decision that Fahey was disqualified from UI benefits due to his

---

[4] In contrast to Fahey's assertion that he does not recall being provided with the employee handbook, he testified at the hearing that he was familiar with the town's public relations policy regarding the expectation that "employees will maintain a professional manner at all times." The board thus concluded that Fahey was "aware of the employer's expectation" regarding these policies.

deliberate misconduct in willful disregard of the employer's interest.[5]

<u>Judgment affirmed</u>.

By the Court (Vuono,
  Brennan & D'Angelo, JJ.[6]),

*Paul Little*

Clerk

Entered:  April 15, 2025.

---

[5] We see no merit to Fahey's argument that it was improper to not allow cross-examination of a DUA witness who had no independent knowledge of the allegations contained in the investigator's report.  If Fahey felt it was necessary to question the investigator directly, he could have asked for further time to summons the investigator to testify.  See 801 Code Mass. Regs. § 1.02(10)(i) (2020).  He did not do so.

[6] The panelists are listed in order of seniority.